### L. M. CROOKER ET AL. V. R. J. GRANT AND WIFE.

#### No. 408.

**Mechanic's Lien on Homestead.** — Husband and wife contracted with plaintiffs for erection of a dwelling, with mechanic's lien upon "the improvements so made and the lot or lots on which the same is situated." The land was more particularly described as "lot number 9, block 2, of Grooms' addition to city of Austin." The house was partly on lot number 9 and partly upon lot number 10, also owned by the defendants. The wife did not know that the building extended upon lot number 10. In suit to foreclose the mechanic's lien, *held:*

1.    Judgment of foreclosure should be entered against husband and wife upon lot number 9, and upon the entire improvements.

2.    Personal judgment against the husband.

APPEAL from Travis.    Tried below before Hon. W. M. KEY.

*Walton, Hill & Walton,* for appellants.

No brief for appellees reached the Reporter.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought on January 8, 1891, by L. M. Crooker and Matilda Christian, appellants, against Robert J. Grant and his wife, Ida A. Grant, appellees, upon a mechanic's lien contract, executed by defendants and owned by the plaintiffs. The contract is as follows:

" This agreement, between S. W. French & Co., of the first part, and Robert J. Grant and Ida A. Grant, wife of the said Robert J. Grant, parties of the second part, entered into on this the 5th day of July, A. D. 1886, witnesseth:

" That the said S. W. French & Co. agree, at the request of the said second parties, to furnish them, at its fair cash value, the work and materials necessary to be used in constructing, on the herein after described property, such improvements as may be designated by said second parties.

"And we, Robert J. Grant and Ida A. Grant, the said second parties, in consideration of said work and materials being so furnished, agree to pay said first party the reasonable cash value of the work and materials so used in constructing improvements on our homestead, situated in Travis County, Texas; and the said first party is hereby declared to have a mechanic's lien on the improvements so made and the land or lots on which the same is situated, to secure the payment of the money to become due for said work and material; which said land is more particularly described as follows: Tract or parcel of land known as lot number 9 in block number 2, of Grooms' addition to the city of Austin, Travis County, Texas, as per the map of said addition of record in plat book number 1, folio 36; said addition being in part a subdivision of the Thomas Gray survey number 10, abstract number 310."

With the foregoing, Grant and wife acknowledged receipt of work and material thereon as follows:

" Received, Austin, Texas, July 5, 1886, of S. W. French & Co., work and materials used in constructing improvements in accordance with the foregoing contract, to the amount of $950, in consideration of which we, or either of us, promise to pay S. W. French & Co., or order, the sum of $950 on or before the 5th day of July, 1890, with interest at the rate of 12 per cent per annum; to secure the payment of which the said S. W. French & Co. are hereby declared to have a mechanic's lien on our homestead, as described and provided for in the foregoing contract, until paid. Payable in monthly installments of $20 per month, with interest payable monthly. Negotiable and payable at the office of S. W. French & Co., with 10 per cent attorney fees if collected by law. House to be insured for the benefit of S. W. French & Co., as their interest may appear."

The foregoing instruments were signed and acknowledged by Grant and wife in due form (by the wife in form as required in making sale of the homestead), and filed with the county clerk of Travis County on July 23, 1886, and recorded by him in book 70, pages 47 and 48, on July 24, 1886. Book 70 was labeled "deed records of Travis County," and in the book were recorded deeds to land transfers, mechanic's liens, and other instruments. Said instruments were also recorded by the same clerk on October 30, 1889, in book 90, which was a book kept exclusively for recording mechanic's liens.

The lumber and material were furnished for the erection of the improvements as agreed in the contract. The impovements were erected on lots 9 and 10 in block 2. The house, a two-story frame, was placed $7\frac{1}{2}$ feet on lot 9 and $16\frac{1}{3}$ feet on lot 10, both lots being at the time of the contract the property, and are now the property, of the defendants; which lots, at the time of their purchase, were designated by them as their homestead; "and they have continuously used and occupied the lots 9 and 10, block 2, and the improvements erected thereon, as their homestead since their completion."

Defendant Robert J. Grant told the contractor to build the house so as to protect and save a certain tree. His wife was sick, and knew nothing about the placing of the house. He, Grant, was on the ground when he bought lot 9, and knew its lines and looked at them. He was not very careful where the house was placed, as he fully expected to pay for the lumber, and he did not positively know until about two years before the trial that the house was not all on lot 9, and not until threatened with a foreclosure of the mechanic's lien on the premises did he make it known to the plaintiffs. Plaintiffs did not know how much of the dwelling was on lot 9 and how much on lot 10 until an official survey was made. Mrs. Grant did not know until about two years before the trial that the most of the improvements were on lot 10.

There was a trial on the 15th day of May, 1891, a jury being waived; and the court, on the 25th day of May, 1891, rendered judgment for plaintiffs for $1676.08, principal, interest, and attorney fees, and for costs, against Robert J. Grant only, foreclosing the mechanic's lien as to both defendants on lot 9 only and the improvements thereon, ordering sale of the same, and execution for any balance due after applying proceeds of sale to the judgment against Robert J. Grant. Plaintiffs have appealed.

Plaintiffs set up fraud on the part of Grant and wife in securing the contract for improvements on lot 9, giving lien thereon, and placing the improvements mostly on lot 10; set up ratification by the wife, and claimed lien upon both lots and all the improvements; also, that the recorded contract, properly construed, secured a lien on all the homestead lot or lots of defendants. Errors were assigned raising these questions,

and also that, at least, they should have had a foreclosure on the improvements placed on lot 10 as well as on lot 9.

*Opinion.*—It is unnecessary to follow the assignments of error in their order. We will state our conclusions of the rights of the parties, as they occur to us, upon the foregoing facts, raised by the assignments.

1. The particular description of land upon which the lien was given in the contract must prevail over the general description, and therefore it must be held that there was no lien by contract upon lot 10.

2. The law provides for the lien both upon the "house, building, or improvements," and upon "the lot or lots of land necessarily connected therewith." Rev. Stats., art. 3164.

The contract expressly provided for the lien upon the improvements, as well as upon the lot or lots upon which the same are to be erected. The lien upon the improvements is distinct from that on the lot, and while it may not apply to more than lot 9, it will apply to all the improvements placed upon the homestead.

Under a statute similar to ours, in Alabama, it was held that the lien upon the improvements would be upheld, though not good upon the land for want of description. It was also held that the lien in favor of the material man upon the improvements would be superior to a former mortgage upon the land. Turner v. Robins, 78 Ala., 593.

The court say: "As a general rule, a building erected upon land becomes a part of the realty, and the property of the owner of the land; but by express agreement another may have a separate property in such building, with right of removal; and a mortgage may be given on the improvements without conveying any title to the land, which operates to pass a right to the improvements. On like principle, a lien may be created by statute on the improvements, without its extension to the realty. There is in this respect no inseparable connection between the buildings and the land."

The same doctrine was again held by the same court upon the single proposition, that when the description of the land, the "one acre" upon which the mechanic's lien could attach, was indefinite, whereby the lien could not be enforced upon the land, still it could be established against the structure or improvements. Bedsole v. Peters, 79 Ala., 133; Lane & Bodley Co. v. Jones, 79 Ala., 156.

The same doctrine was held in Missouri, and we do not think there can be a doubt of it under our statute. Hotel Co. v. Sauer, 65 Mo., 288; Horan v. Frank, 51 Texas, 404.

To this extent, the consent of Mrs. Grant to the lien was legally obtained, and should be enforced.

We conclude that the lien should be established as upon lot 9, and all the improvements situated upon lots 9 and 10 described in the petition,

and that order of sale be granted, with right of the purchaser to remove the improvements from lot 10. And it is ordered that judgment be here rendered to that effect. The judgment of the court below is accordingly reversed and rendered.

*Reversed and rendered.*

Delivered November 29, 1893.