**MOORE et al. v. CAREY BROS. OIL CO. et al. (No. 10040.)***

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 4, 1922. Rehearing Denied Dec. 23, 1922.)

1. **Mines and minerals** ⬅➡112(3)—**Oil well casing held properly found to be personalty, for conversion of which purchaser of leasehold at sale under deed of trust was liable to original sellers having lien thereon.**

In view of the practice of removing steel casings in oil and gas wells found to be dry holes, and the fact that casing sold to the owners of a lease was subsequently removed and sold by purchasers at a sale under a deed of trust of the lease estate, it was properly found that it never became attached to the realty as part of the leasehold, but remained personal property, so that the sellers were entitled to recover against the purchaser for conversion based on their right to foreclose a lien on such casing, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5628 and Vernon's Ann. Civ. St. Supp. 1918, art. 5639a.

2. **Mines and minerals** ⬅➡114—**Affidavit to fix lien on well casing need not describe the leasehold whereon used.**

An affidavit to fix a lien on well casing under Vernon's Sayles' Ann. Civ. St. 1914, art. 5628, and Vernon's Ann. Civ. St. Supp. 1918, art. 5639a, is sufficient, if it describes the casings without a description of the leasehold or estate or land on which it was used sufficient to create a lien under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5622, 5624, since the latter refer to the affidavit of materialman seeking a lien on land as well as a building erected.

3. **Estoppel** ⬅➡54—**One must be fully apprised of his rights before his conduct will estop him from thereafter asserting them.**

It is indispensable that, before one can be estopped by his conduct or gross negligence from asserting his rights, he must have been at the time of such conduct fully apprised of them.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by E. S. Carey and others, doing business under the firm name of the Carey Bros. Oil Company, against W. M. Moore and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

W. B. Chauncey, of Wichita Falls, for appellants.

Guy Rogers and Arch Dawson, both of Wichita Falls, for appellees.

BUCK, J. Plaintiffs below, E. S. Carey, C. W. Carey, R. R. Carey, J. J. Moran, Guy Rogers, J. E. Childers, E. H. Breedlove, T. T. T. Reece, Henry Patterson, W. P. Boline, and J. P. Stokes, as alleged, composing the partnership of Carey Bros. Oil Company, filed suit against the Oklahoma-Texas Petroleum Company for $1,800, alleged to be the balance due on 1,700 feet of steel casing sold by the Carey Bros. Oil Company to the defendant at $1.50 per foot. It was alleged that on May 12, 1920, the casing was delivered by plaintiffs to defendant, and that on June 12, 1920, the defendant paid $1,000 of the purchase price, and plaintiffs have sued for $1,700, with interest. The evidence shows that the 1,700 feet was sold by plaintiffs to the original defendant, hereinafter called petroleum company, and that at the time of the suit there was a balance due on the bill of $1,550.

On March 6, 1920, W. C. Munn and W. B. Chauncey sold an oil and gas lease on 660x165 feet out of block 88, of the Red River Valley land subdivision in Wichita county to the petroleum company, and retained a vendor's lien to secure the payment of five notes for the sum of $10,000 each, which notes were payable monthly from April 15 to August 15, 1920, inclusive; and the petroleum company, for the purpose of better securing said notes, executed and delivered to a trustee, for the benefit of Munn and Chauncey, a deed of trust against said property. Thereafter notes one, two, and three were paid by the petroleum company, but note four, due on July 15, 1920, was not paid. Thereupon the holders of the notes declared the last note also due, and the lease was sold at a trustee's sale on September 7, 1920, W. M. Moore and J. P. McKinney being the purchasers. The purchase price seems to have been $20,000. The deed of trust executed by the petroleum company to Munn and Chauncey was filed for record September 8, 1920, and on September 10, 1920, the plaintiffs filed in the county clerk's office in the materialman's lien records of Wichita county an affidavit and account showing a balance due on the indebtedness of $1,550, the lien attempted to be fixed being against the leasehold estate sold under the deed of trust and owned by the petroleum company at the time of the sale and delivery of the casing to it, and upon the casing itself.

The plaintiffs filed an amended petition during the month of September or October, 1920, and subsequent to the date of the filing of the lien aforesaid, in which amendment Moore and McKinney were made parties defendant to the suit. Subsequently, Moore and McKinney drew said casing out of the well on said lease in which it had been placed by the defendant petroleum company, and sold the same to parties unknown at the

time of the suit. It is agreed that the value of the casing when so withdrawn from the well was $1,550, and that Moore and McKinney, prior to or at the time of making said sale, did not notify the plaintiffs, or either of them, of their intention to sell said casing; that the casing had no special marks or peculiarities or other means of identification, and that it could not be found and identified after said sale; that defendants Moore and McKinney knew that after the purchase of·said casing it would be removed from said lease to some other part of the oil field, and that plaintiffs would, in all probability, lose all trace of the same and would be unable to gain possession of the same or foreclose their lien thereon. It was agreed on the trial that plaintiffs made a diligent search for said casing and were unable to locate the same, or any part thereof, and that Moore and McKinney did not remember to whom they sold said casing, nor to what part of said field said casing was delivered, and were unable to give·plaintiffs any assistance in locating the same. Subsequent to its default in payment of the notes, the petroleum company, a foreign corporation, apparently went out of business in Texas, and had no assets in Texas other than its interest in this lease.

It is agreed that the defendants Moore and McKinney did not know at the time of the purchase of the lease under the trustee's sale that the petroleum company owed any balance, on the casing account, to the plaintiffs; that while there was inserted in the trustee's deed and assignment a stipulation that "it is understood that this sale is made subject to all valid claims against this lease," yet said trustee and Moore and McKinney did not intend that said stipulation should cover and have reference to anything further than some labor bills then owing by the petroleum company for work done on the lease, and amounting to some $250 or $300; that these bills were subsequently paid by Moore and McKinney.

It·was alleged in defendants' answer, and shown in testimony, that W. B. Chauncey stated at the trustee's sale that these labor claims were the only claims against the lease outside of that secured by the deed of trust; that J. J. Moran, one of the plaintiffs, was present at the time, and when Chauncey made the above statement Moran said nothing about any claim held by the plaintiffs. Moran testified that he did not know of any claim of the Carey Bros. Oil Company for the unpaid purchase price of the casing; that he knew that J. E. Childers, another partner, had sold a string of casing to the petroleum company, but thought that Childers had collected for it; that he did not remember hearing anything at the sale about any indebtedness against the property. The court found that he probably did hear it, but had forgotten it. J. E. Childers testified that he was not present at the sale of the lease on September 7, 1920, and could not say that he knew when the sale was going to be had; that he knew the property was going to be sold, but as to the date of the sale he could not state that he knew—it was hearsay with him; that he had no notice of any kind of a sale; that he was not at that time the active manager of the Carey Bros. Oil Company; that he had ceased to be active manager on June 1, 1920; that he knew that the petroleum company owed a balance on the casing in question of $1,550.

It was agreed between the parties that plaintiffs filed their suit against the petroleum company on September 8, 1920, on an open account and did not make any claim whatever as to any lien against the lease and the property thereon; that on said date plaintiffs had a writ of garnishment issued against a bank in Wichita Falls, to hold any sums of money the bank might have belonging to the petroleum company; that on January 6, 1921, the plaintiffs for the first time made Moore and McKinney defendants, and claimed a lien against the property in question.

A trial was had before the court, and judgment rendered for plaintiffs against the Oklahoma-Texas Petroleum Company and W. M. Moore and J. P. McKinney, jointly and severally, for $1,550, with legal interest and costs. The court found, as a matter of law, that even though the defendants Moore and McKinney purchased said property without any notice whatsoever of the plaintiffs' claim, and actually paid a valuable consideration therefor, that they were not innocent purchasers of said property, since they purchased the same within the four months' time in which the plaintiffs had, under the statutes, to fix their lien; that the plaintiffs were not estopped from asserting their claim against the string of casing in question. This last finding evidently referred to the defendants' plea of estoppel, based on the fact that J. J. Moran, one of the partners of the Carey Bros. Oil Company, was present at the sale, and made no objection to the statement made by Chauncey to the effect that there were no claims against the lease (beyond the amount secured by the deed of trust) except some labor bills not exceeding $300. The court further stated that he did not award judgment to plaintiffs against Moore and McKinney, by reason of any belief or holding that the recitation and stipulation in the deed of trust, to the effect that the sale was made subject to all valid claims against the lease, was intended to refer to any other indebtedness except the labor claims.

[1] In so far as defendants Moore and McKinney are concerned, this is an action by plaintiffs against said defendants for a conversion of property upon which the plaintiffs

had a materialman's lien. Appellants have ten propositions under their assignments, and we will group them as far as possible in the discussion. The first proposition is that Moore and McKinney purchased the property in question at a trustee's sale under a deed of trust, and which deed of trust lien had been fixed upon said property long prior to the date on which the casing in question was sold, and that appellants took the property clear of all subsequent liens and incumbrances attempted to be fixed thereafter. The third proposition is that the casing in question was used on the lease in developing the same for oil and gas, and that it thereafter became a part of the realty or leasehold estate, and if the appellees had a remedy against said leasehold estate it would be for their pro rata part of the proceeds of the sale of the lease against the parties who received such proceeds, and not against appellants. The fourth proposition is practically the same as the third. The court found that the casing in question was not used in such a manner as to become a part of the realty, but that such remained as personal property from the time it was sold by the plaintiffs to the petroleum company. While the appellants attack this finding, yet the trial court may have been justified in taking judicial cognizance of the practice in oil fields to remove casing placed in a well which proves to be a dry hole, and inasmuch as the casing was removed from the well and sold, we are not prepared to sustain appellants' objection to this finding.

Article 5628, V. S. Tex. Civ. Statutes, is as follows:

"The lien herein provided for shall attach to the house, building, improvements or railroad for which they were furnished, or the work was done, in preference to any prior lien or encumbrance of mortgage upon the land, upon which the houses, buildings or improvements, or railroad, have been put, or labor performed, and the person enforcing the same may have such house, building or improvement, or any piece of the railroad property, sold separately; provided, any lien, encumbrance or mortgage on the land or improvement at the time of the inception of the lien herein provided for shall not be affected thereby, and holders of such liens need not be made parties in suits to foreclose liens herein provided for."

By act of February 13, 1917, c. 17 (title 86, c. 2A, Vernon's Ann. Civ. St. Supp. 1918), the Legislature gave to contract laborers and materialmen a lien on the land or leasehold interest therein, as well as on the improvements, into which the material or labor was placed, for labor done on the land or for material furnished and used on the land, etc., as shown by article 5639a et seq. Article 5639a provides:

"Any person, corporation, firm, association, partnership, materialman, artisan, laborer or mechanic, who shall, under contract, express or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land, or the owner of any gas pipe line or oil pipe line, or owner of any oil or gas pipe line right of way, or with the trustee, agent or receiver of any such owner, perform labor or furnish material, machinery or supplies, used in the digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry, or oil or gas pipe line, shall have a lien on the whole of such land or leasehold interest therein, or oil pipe line or gas pipe line, including the right of way for same, or lease for oil and gas purposes, the buildings and appurtenances, and upon the materials and supplies so furnished, and upon said oil well, gas well, water well, oil or gas pipe line, mine or quarry for which same are furnished, and upon all of the other oil wells, gas wells, buildings and appurtenances, including pipe line, leasehold interest and land used in operating for oil, gas and other minerals, upon such leasehold or land or pipe line and the right of way therefor, for which said material and supplies were furnished or labor performed. Provided, that if labor supplies, machinery, or material is furnished to a leaseholder the lien hereby created shall not attach to the underlying fee title to the land."

The lien provided for in these articles is, however, subordinate to any lien, incumbrance or mortgage upon the land or leasehold interest in force at the time of the inception of the mechanics or materialmen's lien. Inasmuch as the evidence shows that the deed of trust lien given by the petroleum company to Munn and Chauncey was in force at the time of the sale and delivery of the casing, we do not believe that plaintiffs in the instant case had a right of foreclosure against the leasehold interest purchased by Moore and McKinney. But the trial court did not give a foreclosure against such leasehold interest, and evidently predicated the award of judgment against Moore and McKinney upon the ground of conversion of the casing, which the court found to be at the time of conversion of the value of $1,550.

In Eardley Bros. v. Burt, 182 S. W. 721, the San Antonio Court of Civil Appeals held that a vendor's lien on land sold has priority over a mechanic's lien thereon based upon the drilling of an artesian well for the buyer. Lyon-Gray Lumber Co. v. Cotton Oil Co. (Tex. Civ. App.) 194 S. W. 633, writ refused; Hampshire v. Greeves, 104 Tex. 620, 143 S. W. 147, by the Supreme Court.

But, as before stated, the basis of judgment in this case against appellants is founded, not on the right of appellees to foreclose their materialman's lien on the leasehold interest involved, but on their right to foreclose their lien on the casing sold by them, and which had been converted by the appellants. This casing, the trial court found, did not become attached to the realty so as to become a part of it, but remained personal property, even while in the well. Murray

Co. v. Simmons (Tex. Com. App.) 229 S. W. 461. Hence, we overrule propositions, one, three, four and nine.

[2] By the second proposition appellants attack the sufficiency of the proof to show that the affidavit filed on behalf of the appellees to fix their materialman's lien contained a specific description of the property upon which the lien was attempted to be fixed. The evidence with reference to this matter seems to be as follows:

"On September 10, at 8:50 o'clock, 1920, the plaintiffs by and through their agent and copartner, Guy Rogers, made affidavit that the Oklahoma-Texas Petroleum Company was indebted to the plaintiffs in the sum of $1,550 and in said affidavit it was stated that on May 12, 1920, the plaintiffs sold to the Oklahoma-Texas Petroleum Company, 1,700 feet of $5^3/16$-inch pipe at $1.50 per foot, for the total sum of $2,550, and that $1,000 had been paid on said account, leaving a balance of $1,550, and which affidavit and account was filed in the materialman's lien records of Wichita county, Texas, on September 10, at 8:50 a. m., 1920."

By reference to article 5639a, supra, it will be noted that one who furnishes material and fixes his materialman's lien thereon within the four months provided by statute, has a lien upon the material furnished, irrespective of the land upon which such material is placed. The court below, and we think properly, did not award the plaintiffs a foreclosure upon the leasehold interest, but evidently held that the plaintiffs showed themselves entitled to a lien upon the casing, which the court held did not at any time become a part of the realty between the time it was placed thereon and time it was sold by the appellants. The court further found that the casing had no peculiar marks by means of which it could be identified, and very probably the only description that could be given of it was the description given in the excerpt from the statement of facts heretofore quoted. At any rate, no objection is raised to the insufficiency of the description of the casing itself, but merely to the failure of the testimony to show that the leasehold estate or land upon which the casing was located was not sufficiently described as to comply with articles 5622 and 5624, inclusive, V. S. Tex. Civ. Statutes. These articles refer to the affidavit of a person who, having furnished material, etc., for the erection of a building, seeks to fix a materialman's lien upon the land as well as the building so erected. In the case of Crooker v. Grant, 5 Tex. Civ. App. 182, 24 S. W. 689, a mechanic's lien was fixed upon the defendant's homestead for improvements placed thereon. The homestead consisted of lots 9 and 10. The lien statement described the land as lot 9, but the improvements were placed upon both lots 9 and 10. The question was presented as to whether the plaintiffs had a lien upon the improvements placed upon lot 10, no description of the lot being in the lien statement. Judge Collard, of the Austin Court of Civil Appeals, speaking for the court, said:

"The lien upon the improvements is distinct from that on the lot, and while it may not apply to more than lot 9, it will apply to all the improvements placed upon the homestead. Under a statute similar to ours in Alabama, it was held that the lien upon the improvements would be upheld, though not good upon the land for want of description. * * * 'On like principle, a lien may be created by statute on the improvements, without its extension to the realty. There is, in this respect, no inseparable connection between the buildings and the land.' The same doctrine was again held by the same court upon the single proposition that, when the description of the land—the 'one acre' upon which the mechanic's lien could attach—was indefinite, whereby the lien could not be enforced upon the land, still it could be established against the structure or improvements."

We hold that the description given is not open to the objection raised, and propositions 2 and 6 are overruled.

[3] Appellants' seventh proposition is that where a person is claiming a lien against property and which lien is not of record, and he stands silently by knowing that said property is being sold at trustee's sale and knowing that representations are made to the effect that the property is clear of liens, and fails to put the purchasers on notice of his lien, then he is estopped from thereafter asserting a lien against said property, and the trial court should have held as a matter of law that appellees were estopped in this case, and should have rendered judgment for appellants.

J. J. Moran, one of the plaintiffs, who was present at the time of the sale, testified without contradiction that he did not know at the time that he and his associates held any claim whatever against the lease then being sold, and understood that the casing furnished the petroleum company had been paid for. In Burleson v. Burleson, 28 Tex. 383, it is said:

"In order to apply an estoppel, it is indispensable that the party standing by and concealing his rights should be fully apprised of them, and should, by his conduct or gross neglect, encourage or influence the purchaser; for if he be wholly ignorant of his rights, or the purchaser know them, or if his acts, silence, or negligence do not mislead or in any way affect the transaction, there can be no just inference of actual or constructive fraud on his part."

The evidence further shows that Childers was not present at the sale and did not know when such sale was to take place, although he knew, in a general way, that the sale was to be had; hence the trial court was not re-

quired to hold that he was estopped by his actions, since he never heard the statement made by Mr. Chauncey that these labor claims were the only claims held against the property outside the claim for the unpaid purchase price.

Article 5627, Rev. Statutes, provided that when a contract is filed and recorded, as required by article 5626, which in turn refers to article 5622, and if the filing be within four months from the time the labor or material was furnished, it shall be deemed sufficient diligence to fix and secure the lien. Article 5639d refers to chapter 2, title 86 of Rev. Statutes of 1911, and says that the liens herein created shall be fixed and secured, and notice thereof shall be given, and such liens shall attach and be enforced in the same manner as provided in said chapter and title so referred to.

In Trammell v. Mount, 68 Tex. 210, 215, 4 S. W. 377, 379 (2 Am. St. Rep. 479), the Supreme Court said:

"The lien of a mechanic though not fixed upon the record of the contract or bill of particulars, when it is fixed, relates back to the time when the work was performed or the material furnished, and hence takes precedence of all claims to the property improved, which have been fastened upon it since that time."

But, inasmuch as the trial court did not foreclose any lien against the land or the lease thereon, a discussion of this question becomes largely fruitless, except as it bears upon whether plaintiffs fixed their lien upon the casing within four months from the time that the indebtedness accrued, and the evidence supports this conclusion.

All assignments are overruled, and the judgment is affirmed.