James H. DOYLE et al., Appellants,

v.

SECOND MASTER–BILT HOMES, INC., Appellee.

No. 17082.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 30, 1970.

Rehearing Denied Feb. 27, 1970.

Second Rehearing Denied March 27, 1970.

Crocker & McDonald, and Toy Crocker, Fort Worth, for appellants.

McGown, Godfrey, Decker, Mc-Mackin, Shipman & McClane, and John B. McClane, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

The appeal is by defendant James H. Doyle and his daughter from a judgment in behalf of Second Master-Bilt Homes, Inc., for debt and foreclosure of a mechanic's lien securing the payment of same pursuant to said plaintiff's erection of a residential structure for defendant. The trial was before the court without a jury.

Affirmed.

■ Vernon's Ann.Tex.Civ.St., Title 90, "Liens", Chapter Two, "Mechanics, Contractors and Material Men", Art. 5452, "Lien prescribed" (a statute enacted by the Legislature according to the provisions and to accomplish the purposes which were prescribed in Texas' Constitution, Art. 16, Sec. 37, Vernon's Ann.St.), provides in part that one who may labor or furnish material, etc. to erect or repair any house or building under or by virtue of a contract with the owner (one who becomes the owner thereof before or after the completion of the work, materials, etc.) may have a lien upon such house or building and also upon the lot or lots necessarily connected therewith to secure payment therefor–upon complying with the provisions of the aforementioned Chapter Two. The statute is a remedial one in derogation of the general rule of the common law that a house erected upon land becomes a part thereof. See William Cameron & Co. v. Trueheart, 165 S.W. 58 (Austin Civ.App., 1914, no writ hist.) and cases cited.

There is no contention that there was any default of the plaintiff builder in complying with the provisions of such Chapter Two.

The defendant, who was the owner of certain lots numbered 4, 5, 6, and 7, entered into a contract with the plaintiff, a building contractor, to erect a semi-finished residential building on Lot 4. A survey was made by or for the builder, the purport of which was to stake-out Lot 4 preliminary to institution of actual construction. The stakes were mistakenly placed as though the side boundaries thereof were at right-angle to the road running along in front of Lots 4, 5, 6, and 7. Actually the side boundaries of the lots angled so that they ended at the road in an approximate 45 degree angle. The owner observed the fact that the stakes were misplaced. He notified the builder, who had Lot 4 re-surveyed, with stakes properly placed.

Through negligence on the part of the builder and its crew of workmen who were to build the structure on Lot 4 someone obviously picked up the survey papers first prepared, erroneously as aforedescribed, and used them in locating site of the building and in completing what was contemplated to be the builder's performance under the contract. A result which occurred was that the structure, upon delivery to and acceptance by the owner, was located about one-half on Lot 4 and about one-half on Lot 5.

Though both lots belonged to the same owner, defendant herein, Lot 5 was one of two lots comprising his homestead. As heretofore noted Lot 5 was not a lot necessarily connected with or necessary to be involved or used by the builder in its accomplishment of the consideration owing by it under the contract. Lot 5 was a part of the owner's homestead, and as such no lien could attach unless the parties specifically contracted in writing with respect to improvements to be placed thereon. That no lien could have attached to Lot 5 is conceded by all parties.

Despite the fact that the owner lived next door during the course of construction he (under stipulation made) was not consciously aware of the fact that it was misplaced in that in part it was located on his homestead. A finding of fact made, however, was to the effect that he should have known such fact. He subsequently executed an instrument acknowledging completion by the builder according to contract and entered into possession.

Prescribed to be the debt of the owner upon builder's complete performance was the principal sum of $8,422.50, together with interest at the rate of 8% per annum, payable monthly in installments of $77.50.

Following completion and acceptance of the building the owner made the prescribed monthly payments on principal and interest for approximately two and one-half years. The principal balance shown by an accounting, and based upon the original principal sum owing at $8,422.50, with credits made to principal and interest as payments

were made, indicated a balance of $7,425.-39. It is, of course, obvious that if the owner sustained damages by reason of the builder's breach of contract in the mis-location of the structure they would have been damages to which the owner was entitled as of the date of the builder's performance was purportedly complete.

In their contract the parties provided, in part, as follows:

"It is further distinctly understood and agreed that should the improvements, herein mentioned to be erected, fail for any reason to be completed, *or fail to be completed according to the contract,* * * * *that Party of the Second Part* * * * *shall have a valid and subsisting lien for said contract price, less such amount as would be reasonably necessary to complete said improvements according to plans and specifications."* (Emphasis supplied.)

■ As to the effect of an express provision in a contract for a remedy in the case of a breach, the authorities are not in harmony, some holding the contractual remedy exclusive, while others hold the contrary. Texas follows the majority rule that parties to a contract may provide their own remedies for a breach of the contract provided the remedy thus available does not contravene the law or violate public policy. See 17A C.J.S. Contracts § 523(1), p. 1011, "Nature, Form, and Grounds of Action", Sub. e, "Remedy Stipulated by Contract"; 9 Tex. Digest, Contracts ☜127, "(Legality of Object and of Consideration)–Ousting jurisdiction or limiting powers of court"; Magnolia Provision Co. v. Coleman, 3 S.W.2d 412 (Tex.Comm.App. 1928); Municipal Gas Co. v. Lone Star Gas Co., 259 S.W. 684 (Dallas Civ.App., 1924, affirmed 117 Tex. 331, at 3 S.W.2d 790, 58 A.L.R. 797) in which it was stated further that where parties have legally contracted in reference to a mutual remedy for breach of contract, such remedy becomes a vested property right.

■ The quoted section obviously does not contravene the law or violate public policy. It seems clear that the parties have so contracted that in the event of the breach by the builder resulting from its failure to complete the structure according to the contract the amount of the indebtedness owing by owner to builder would be the contractual price computable by a deduction from the amount of $8,422.50 the amount established as "such amount as would be reasonably necessary to complete said improvements according to plans and specifications."

■ Where there has been a resort to litigation as a result of failure or inability on the part of the parties to resolve the proper amount to be applied as a deduction it would seem that the burden would be cast upon the owner to establish by evidence, under pleadings, such amount as would be reasonably necessary to so complete the contract. The builder's *prima facie* case would be made out by the contract itself, coupled with proof of any bona fide performance made in good faith thereunder. The requirement would thereupon devolve upon the owner to offer evidence, under pleadings, showing the amount of expenditure reasonably necessary to move the house so that it would rest entirely upon his Lot 4.

The only portion of the owner's pleadings which might be considered to have a bearing upon that which would be his burden reads as follows: ."Defendants would further show the Court, in the alternative, that in the event it is held that Plaintiff is entitled to foreclose the alleged lien, that Defendants are entitled to an offset for the cost of removing the improvements from the property described in the May 30, 1961, contract, if same can be done without destruction of the improvements * * * which costs the Defendants allege to be $6,800.00."

The full and complete record is devoid of any evidence whatever concerning the cost of removing the improvements from Lot 5 to any other place. Neither is there any evidence in the record which might be

considered as proof upon the measure of damages for which the parties contracted.

The rule discussed would have no relation to the damages, and measure thereof, which the owner might have had independently of the contract and because of the builder's invasion of Lot 5. However, the owner neither alleged in his pleadings nor established by any proof any right to recover damages accruing to him by reason thereof.

The result, therefore, is a case wherein the builder has established the right to recover of the owner the full amount of the balance of indebtedness owing under the contract, for interest thereon and for the attorney's fees provided by the notes.

In view of the propriety of the builder's recovery under the contract, the only question remaining to be determined is whether the mechanic's lien may be satisfied by a foreclosure not only upon Lot 4 and the improvements erected thereon, but also by a foreclosure upon the improvements erected upon Lot 5, a part of the owner's "homestead".

We have concluded that there may also be a foreclosure upon the improvements located on Lot 5. As the case is resolved by what we have already held, it is on "all fours" with the case of Crooker v. Grant, 5 Tex.Civ.App. 182, 24 S.W. 689 (CCA of Tex., 1893, no writ hist.). We have had recourse to Sheppard's Southwestern Reporter Citations. Therefrom it appears that the material holding of the case has been followed and never been overruled or distinguished. In *Crooker* the situation was that a house built for another was erroneously misplaced in that it rested in part upon a lot belonging to him adjacent to his homestead lot, and in part upon his homestead. The contract under which the house was erected, and because of which the lien was given, called for entire construction on the adjacent lot. On appeal it was contended that the lien extended to the "improvements" resting upon the "homestead" lot as well as to the "improvements" and the lot upon which the entire structure should have been erected. The court's holding sustained the contention.

The holding in *Crooker* was: "The law provides for the lien both upon the 'house, building, or improvements', and upon 'the lot or lots of land necessarily connected therewith.' Rev.St. art. 3164. (Now Art. 5452 which is unaltered in any material respect). The contract expressly provided for the lien upon the improvements, as well as upon the lot or lots upon which the same are to be erected. The lien upon the improvements is distinct from that on the lot, and, while it may not apply to more than lot 9, it will apply to all the improvements placed upon the homestead."

There was no error in the judgment of foreclosure as applied to the improvements which were a part of the structure resting upon the owner's Lot 5. It was likewise proper to render judgment of foreclosure on such part of Lot 4 as was described in the parties' contract and the improvements thereon.

While we do not agree with some of the court's Conclusions of Law the judgment in the case would, in view of the state of the record, be correct in any event. Application of the law to facts properly found and to undisputed facts evidenced by the record compel the judgment.

We have not discussed many of the points of error presented, but they have all been severally considered and are overruled. All have relation to the proper application of law to the facts of the case rather than to any procedural matter.

Judgment is affirmed.

## OPINION ON MOTION FOR REHEARING

MASSEY, Chief Justice.

In the opinion we stated that the record was devoid of evidence concerning the cost of removing the improvements from Lot 5.

It is further stated therein that there was no evidence which we might consider as proof upon the measure of damages for which the parties contracted; i.e. proof of the amount reasonably necessary to complete the improvements contracted to be erected upon the owner's Lot 4.

■ These statements were erroneously made. The parties stipulated that the cost of relocation of the improvements, so that they would be in compliance with the parties' contract, would be between the amount of $3,500.00 and $6,000.00. Said cost would be that reasonably necessary to complete the improvements so that they would rest on the owner's Lot 4, in accordance with the contract. Therefore, we are of the opinion that the owner's pleadings alleged those damages which the contract provided in the event of the builder's breach. Therein it was claimed that the owner was entitled to an offset for the cost of removing the improvements, if possible to be done without their destruction, alleged to cost $6,800.00.

The judgment of the trial court was for debt and foreclosure of the lien provided as security therefor, under pleadings and proof which supported that decree. The judgment should by way of credit and set-off, have awarded the owner the amount of $3,500.00 as damages to which he was entitled under the pleadings and stipulations.

■ Trial was before the court, without a jury, and there was no Motion for New Trial and no Assignments of Error to the trial court. We review the Points of Error presented to this appellate court in the determination of whether the owner has complained because the trial court failed to allow him his damages in at least the sum of $3,500.00, by way of set-off, etc. If the owner has done so the judgment in the case should be reversed, because of the failure in such respect.

But we have concluded that the owner has not made the necessary complaint; and since he has not we overrule the Motion for Rehearing.

The only Point of Error presented which approaches such a complaint is the owner's Third Point, reading as follows: "The Court erred in holding that the Appellee was entitled to judgment for $7,425.39 against Appellant, when the stipulated facts show the Appellee failed to substantially perform its contract and negligently placed the improvements upon the wrong property."

■ In the statement and argument in the owner's brief, under his Third Point, we find a total absence of any complaint relative to "amount" the owner should be found entitled (if entitled to anything at all under the circumstances of the case) either by way of a reduction of the builder's award or otherwise. The object of a "point" in the brief, as provided for in Rule 418, Texas Rules of Civil Procedure, is to call the Court's attention to the questions raised and discussed in the brief. A "point" is sufficient if it directs the Court's attention to the matter complained of, and, in the determination of the "matter complained of" the Court will look to the "point" and the statement and argument thereunder to determine the question of reversible error. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943). On the analogous question of sufficiency of assignments of error in a complainant's Motion for New Trial, see Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960).

As indicated, our conclusion is that the owner has failed to present the material complaint requisite to a reversal by means of an appropriate Point of Error. In view thereof we hold his right to make such complaint was waived.

The motion for rehearing is overruled.