### RAYWOOD RICE, CANAL & MILLING COMPANY v. W. F. ERP AND W. E. WRIGHT.

#### No. 2208.   Decided April 24, 1912.

**1.—Irrigation—Contract—Statute—Equality of Service.**

Under section 7 of the Irrigation Law, Act of March 21, 1895, Laws, 24th Leg., p. 27, an incorporated irrigation company was bound, in case of shortage of water from drought or accident, to distribute its water to consumers pro rata. A contract to supply to one consumer water sufficient to make a full crop of rice on his land must be taken as made subject to this qualification of the company's undertaking and liability. It would be illegal if binding the company to so furnish water absolutely and in preference to others. (Pp. 165-167.)

**2.—Same.**

No damages are recoverable for the non-performance of a contract based upon a statute which by its terms would make the performance illegal under contingencies which have occurred. (Pp. 166, 167.)

**3.—Same—Eminent Domain—Public Service Corporation.**

The right to exercise the power of eminent domain can be conferred only for public purposes, and a corporation accepting such grant has a duty of public service imposed on it, becomes quasi-public in character, and is incapable of making contracts for service to one which would disqualify it from rendering like service to others having an equal right. This rule, independent of statute, would prevent an irrigation company from making a contract with one customer which it could not perform without discrimination against others. (P. 167.)

**4.—Irrigation—Contract—Duress.**

An oral contract by an irrigation company to furnish a customer water sufficient to enable him to make a full crop of rice on his land, being subject to the qualification by statute which required.it in case of shortage by drouth or accident to furnish to all customers pro rata, a subsequent written contract limiting its liability as the terms of the statute had done did not change such liability, and it was immaterial whether or not it had exercised duress to compel the customer to make such written contract. (Pp. 167, 168.)

**5.—Same—Contract Illegal in Part.**

A written contract obtained by duress on the part of an irrigation company, from one having a previous verbal contract with it for a certain water supply, so far as it limited the damages recoverable for the company's non-performance to an arbitrary amount of four dollars per acre, would be void. One which limited its obligation to supplying enough water to make a certain yield per acre, might be valid or not, according to the circumstances, and present a question of fact. The entire contract will not be made void by an illegal clause, where this may be separated from the body of the instrument. (P. 168.)

**6.—Irrigation—Charge.**

Instructions as to the right to recover against an irrigation company for failure to comply with its contract to furnish water, and its excuse from performance by drought and accident and the necessity of treating all customers equally, considered and held not to be contradictory and to present the questions properly. (Pp. 168, 169.)

**7.—Charge.**

An appellant can not complain of an instruction which is too favorable to him. (P. 169.)

Error to the Court of Civil Appeals, First District, in an appeal from Liberty County.

Erp and Wright sued the Raywood Rice, Canal & Milling Company, and appealed from a judgment for defendant. It being ordered reversed and remanded, the company obtained writ of error on the ground of a dissenting opinion by Mr. Justice Reese.

*Marshall & Marshall* and *Louis & Masterson,* for plaintiff in error. —It is no defense to an action against an irrigation company for damages for the failure to furnish water in accordance with its contract with a person owning lands on and contiguous to its canals, that, in order to furnish such water, the company would not have sufficient water to furnish its other patrons with proportionate amount thereof. Rev. Stats., Art: 3125; Colorado Canal Co. v. McFarland & Southwell, 94 S. W., 405.

An irrigation company being a quasi-public corporation cannot enforce unreasonable provisions of its contracts, and where such provisions appear upon the face thereof to be unreasonable, the court should declare the same void. Colorado Canal Co. v. McFarland & Southwell, 94 S. W., 405; Bordan v. Tres Palacios R. I. Co., 82 S. W., 465, 98 Texas, 474.

*Stevens & Pickett,* for defendants in error.—The appellee being a quasi-public corporation, and engaged in furnishing water for irrigation for the common welfare of the community, must furnish water

to the lands adjoining or contiguous to its canal without unjust discrimination, either as to rates or service. Rev. Stats., arts., 3124-3125; 1 Farnham on Waters, sec. 162c, p. 865; 30 Am. & Eng. Enc., 426-427; Griffin v. Water Co., 30 S. E., 319; Mobile v. Water Co., 30 So., 445; Hugen v. Water Co., 28 Pac., 244; Gordon v. Derau., 111 N. W., 272; Weimer v. Water Co., 130 Fed., 251; Farmers Asso. v. R'y Co., 56 N. W., 248; Richmond v. Nat. Gas. Co., 58 N. E., 1049; G. C. & S. F. v. Hefley, 158 U. S., 98.

In an action against an irrigation company for damages for failure to furnish water to irrigate a crop, it should be left to the jury to determine whether certain limitations in the contract are reasonable. Raywood Canal Co. v. Langford, 74 S. W., 926; Colorado Canal Co. v. McFarland, 109 S. W., 436.

*Duval West* and *Frank H. Booth*, on behalf of litigants interested as was appellee, filed a brief and argument as amici curiae.

MR. JUSTICE DIBRELL delivered the opinion of the court.

This action was begun in the District Court of Liberty County by W. F. Erp and E. B. Wright, plaintiffs, against the Raywood Rice Canal & Milling Company, defendant, to recover damages in the sum of $9,160.00, for the failure of defendant to furnish water to plaintiffs during the season of 1907 with which to make a rice crop in compliance with their contract.

Plaintiffs' cause of action was based upon an alleged verbal contract entered into with defendant's authorized agent on February 10, 1907, by the terms of which defendant agreed to furnish plaintiffs sufficient water to make a full crop of rice on 350 acres of land lying on defendant's canal, for which plaintiffs were to pay the sum of $7.50 per acre. Relying upon said contract Plaintiffs planted 350 acres in rice and carefully cultivated and harvested the same, but the defendant failed and refused to furnish a full supply of water in compliance with the contract, by reason of which plaintiffs made 2,290 sacks of rice less than they would have made had a full supply of water been furnished. The loss was estimated at the sum sued for.

Defendant denied making the verbal contract sued on by plaintiffs, but alleged that it entered into a written contract with plaintiffs on May 23, 1907, by the terms of which it did not undertake to furnish plaintiffs a full supply of water for their rice crop, but only such an amount as would sufficiently irrigate the land so as to produce on an average five sacks of rice to the acre for the season of 1907. That this provision was reasonable for the reason that the capacity of its pumps and canals were limited and would not have been able to furnish all the patrons owning or farming lands on its canal during the year 1907, but that it did furnish plaintiffs with sufficient water through its canal to enable them to make a crop in excess of five sacks of rice per acre on an average on their 350 acres for the year 1907.

The answer also set up the provision of the contract that defendant was not liable for damages resulting from its failure to supply water

resulting from unavoidable accident or drought and that on or about May 23, 1907, there was in the vicinity of this canal an unprecedented rain which caused its main canal to wash out in three places and to become empty and that with all due diligence to repair same two weeks time was required and that its said canal was properly constructed, having withstood all contingencies for the past six years. In addition to such accident it was alleged that the season of 1907 was unusually dry and there was a great deal of evaporation and absorption, and that by reason of these facts, in order to have furnished plaintiffs with water to make a full crop of rice, it would have been compelled to discriminate against its other patrons who were entitled to their pro rata share of the supply of water. That plaintiff was a common carrier of water and bound to distribute without discrimination, and that if it had agreed to supply plaintiff with a sufficient amount of water to make a full crop of rice such an agreement would, under the circumstances and contingencies that happened, have been a discrimination against the other patrons of the canal, and in violation of law.

It was also alleged that plaintiffs received their pro rata share of the water defendant was able to supply during the season of 1907, and it was not within the power of defendant during that season to supply plaintiffs with a sufficient amount of water to make a full crop of rice without discriminating against the other patrons entitled to water from its canal.

By supplemental petition plaintiffs presented certain special exceptions which will be referred to later in this opinion, pleaded *non est factum* to the written contract, and in the alternative pleaded duress in avoidance of the written contract set up by the defendant. The allegations of duress as set forth in plaintiffs supplemental petition were that a verbal contract had been entered into on February 10, 1907, by the terms of which plaintiffs were to have water furnished them to make a full crop of rice without any limitation prescribing the measure of damages and without any restrictions as to the quantity of water save a sufficient amount to secure a full crop of rice. That pursuant to this verbal agreement plaintiffs went to great expense in preparing their land and in planting their rice, and that at the time said written contract was entered into defendant represented to plaintiffs and threatened that it would not furnish plaintiffs any water unless they would execute said contract. That plaintiffs rice would in a day or two be in need of water and without which such crop would be ruined, and in part alleged "that they were absolutely helpless, that they had all their funds invested in said crop, that they were unable to stand the delay and expense of litigation with said defendant, to enforce their rights under said contract and that had they been so able it would have been of no avail because delay to any extent and more especially such as would have been necessary in order to compel the enforcement of said contract meant destruction beyond any possible hope of raising any crop on said land; and that these plaintiffs then and there being deprived of, and not permitted the exercise of, their own free will, and without in fact agreeing thereto, were forced and compelled by said defendant, acting through said R.

E. Brooks by using and taking the said advantage of the stress of circumstances and conditions as aforesaid, to execute a purported written contract, but they did so without in any manner intending to be bound by such act and then and there so advised said defendant and at the time of the execution and delivery protested against the same.''

Other matters of pleading and complaints made of the court's charge will be set forth in the body of this opinion where considered essential to a proper understanding of the points of law discussed and determined.

The cause was tried by the court with the assistance of a jury and upon their verdict judgment was rendered for the defendant. The cause was appealed to the Honorable Court of Civil Appeals of the First District and by that court reversed and remanded and is in this court upon writ of error upon the ground of dissent.

The main question presented to this court for determination is, assuming that defendant made with plaintiffs the verbal contract whereby it agreed to furnish water from its canal for irrigating plaintiffs' land in sufficient quantity to produce a full crop of rice for the ensuing season, whether a cause of action for damages arose from a failure to furnish such quantity of water where it was shown defendant was not able to supply such quantity of water without discriminating against other patrons and consumers entitled under the law to their pro rata share of water from said canal. This question may be determined independent of any provision of the written contract seeking to limit the supply of water to such an amount as would produce not less than five sacks of rice per acre on an average, since it is conceded the evidence established the fact that it was, without any negligence on the part of defendant, impossible to supply plaintiffs with water sufficient to make a full crop of rice as agreed upon without discriminating against others who were entitled to their pro rata share of the water defendant was able to furnish. That this may be clearly seen we quote section 11 of the Irrigation Act of 1895, as amended at the same session the Act was passed by the Legislature, as follows:

''Corporations may be formed and chartered under the provisions of this Act and of the general corporation laws of the State of Texas, for the purpose of constructing, maintaining and operating canals, ditches, flumes, feeders, laterals, reservoirs, dams, lakes and wells, and of conducting and transferring water to all persons entitled to the same for irrigation, mining, milling, to cities and towns for water works, and for stock raising, and for the purpose of building storage reservoirs for the collection and storage of water for the purposes before mentioned. All such corporations shall have full power and authority to make contracts for the sale of permanent water rights, and to have the same secured by liens on the land or otherwise, and to lease, rent or otherwise dispose of the water controlled by such corporation for such time as may be agreed upon, and in addition to the lien on the crops hereinafter provided for, the lease or rental contract may be secured by a lien on the land or otherwise. All persons who own or hold a possessory right or title to land adjoining or contiguous

to any canal, ditch, flume or lateral constructed and maintained under the provisions of this act, and who shall have secured a right to the use of water in said canal, ditch, flume, lateral, reservoir, dam or lake, shall be entitled to be supplied from such canal, ditch, flume, lateral, dam or lake with water for irrigation of such land, and for mining, milling and stockraising in accordance with the terms of his or her contract; Provided, that if the person, association or corporation owning or controlling such water, and the person who owns or holds a possessory right or title to land adjoining or contiguous to any canal, ditch, flume or lateral constructed and maintained under the provisions of this act fail to agree upon a price for a permanent water right, or for the use or rental of the necessary water to irrigate the land of such person and for mining, milling and stockraising, such person, firm, association or corporation shall, nevertheless, if such person, firm, association or corporation has or controls any water not contracted to others, furnish the necessary water to such person to irrigate his land, and for mining, milling and stockraising, at such prices as may be reasonable and just; Provided, further, that in case of shortage of water from drought, accident or other cause, the water to be distributed shall be divided among all consumers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and perference be given to none.  The sale of the permanent water right shall be an easement to the land and pass with the title thereof, and the owner thereof shall be entitled to the use of the water upon the terms provided in his or their contract with such person or corporation, or in case no contract is entered into, then at just and reasonable prices.  Any instrument of writing providing a permanent water right shall be admitted to record in the same manner as other instruments relating to the conveyance of land.''

From the act itself it will be seen ''that in case of shortage of water from drought, accident or other cause, the water to be distributed shall be divided among all consumers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given to none.''

While properly speaking it cannot be said the contract was illegal, yet it must be held that the parties entered into it subject to the provisions of the statute.  If the contract in terms provided that such supply of water should be furnished plaintiffs by defendant even though a discrimination against other consumers should be necessary it would clearly have been an illegal contract.  But the exigencies of the case without any fault on the part of defendant were such that it could not comply with the agreement without violating the law.  This it was not authorized or called upon to do, and its refusal to violate the plain letter and spirit of the law would not subject it to damages.  A contract which by its terms exacts a violation of the law will not subject the defaulting party to damages.  Nor are damages recoverable for the non-performance of a contract which while legal in its terms may not, from the circumstances of the case, be performed without violating the law.  This would especially be true where the contract is based upon a statute which by its terms

provides for contingencies that would make the performance of the contract illegal. And this would be true whether or not the violation of the statute was penalized. It may be said with a degree of accuracy that this would be true of contracts made by public service or quasi public corporations in the absence of any particular statute of inhibition, upon the general principle of public policy, which demands like treatment at the hands of such corporations towards all citizens, and which places the ban upon discriminations. This doctrine was announced by Judge Stayton in Gulf, C. & S. F. Co. v. Morris, 67 Texas, 699, in the following language:

"It is well settled that corporations organized for public purposes cannot, by contract of sale, lease or otherwise, render themselves incapable of performing their duties to the public, or in any way absolve themselves from the obligation which forms the main consideration for giving them a corporate existence, unless this be done by the consent of the State, given through the charter, or in some other manner. Hence, any contract through which such a corporation seeks to accomplish such a result is void, unless it has legislative sanction." Wiemer v. Louisville Water Co., 130 Fed., 251; Griffin v. Goldboro, 122 N. C., 206 (30 S. E., 319, 41 L. R. A., 240); Haugen v. Albina, 21 Ore., 411 (28 Pac., 244, 14 L. R. A., 224); 30 Am. & Eng. Ency. Law, (2d ed.) 426; Bishop on Contracts, sec. 473.

The granting of the power of eminent domain imposes a public service in return. No authority under our law exists for conferring the power of eminent domain for private use. The moment such power is granted the grantee becomes quasi public in character and while his or its functions are exercised for profit they must be exercised in the interest of the public upon reasonable terms and without discrimination. This is the rule independent of statutory enactment. It follows, therefore, in view of the law thus declared and the facts of this case, as heretofore stated, plaintiffs could not recover damages for the failure of defendant to furnish them a supply of water sufficient to make a full crop of rice, for the reason it was unable to do so without discrimination against others entitled to receive their portion of the supply of water. 2 Beach Mun. Corp. 834 (C); 29 Am. & Eng. Ency. Law (1st ed.) 19; City of Mobile v. Bienville Water Supply Co., 130 Ala., 379, 30 So. 445; Specht v. Collins, 81 Texas, 213; 9 Cyc. 481.

It is immaterial, as to the issue raised by the pleadings and the evidence, whether or not there was duress in the execution of the written contract, for the reason the verbal contract with its full supply provision, and the written contract with its provision limiting the supply, were both subject to the provisions of the statute which authorized the defendant to furnish the water and the plaintiffs the right to demand its use. The parties were possessed of all the rights by the terms of the statute that either could derive from a contract with the other, in so far as such contract was able to control the supply of water contrary to the statute. Hence the issue of duress is not material. The result of this suit is in no way controlled by that issue, and we think there is no necessity for an extended discussion of that question. If it could be said the facts and circumstances under

which plaintiffs executed the written contract constituted duress in so far as the agreement attempted to relieve defendant of any act of negligence in the quantity of water it was required to furnish plaintiffs, such limitations if manifestly illegal would be so held, but if not manifestly illegal, their reasonableness would become an issue to be determined by the jury as any other issue in the case. If one or more of the provisions of a contract procured in the manner and by the means alleged in plaintiffs' plea of duress should be manifestly illegal, that fact alone would not render the entire contract void, if such illegal clauses could be separated from the body of the contract. The rule upon this subject is fairly stated thus: "A contract illegal in part and legal as to the residue is void as to all, when the parts cannot be separated; when they can be, the good will stand and the rest fall." (Bishop on Contracts, Sec. 487.).

It is clear from the provisions of section 11, above quoted, that the Legislature intended to give all persons owning or holding a possessory right to any lands adjacent or contiguous to any canal, ditch, flume or lateral the right to demand the use of the water of any such canal, ditch, flume or lateral upon reasonable terms in harmony with the act itself, to be embodied in a written contract which the owner of the canal had the right to exact. Of course the owner of the canal could not legally exact from its patrons the execution of a written contract containing any clause or clauses limiting its undertaking and obligation to furnish only such supply of water as would be sufficient to make an average crop of five sacks of rice to the acre, unless under the circumstances of the case such limitation was reasonable; or limiting the amount of damages to which it would be subject in case of negligence to an arbitrary sum. In the case of the provision limiting the undertaking of defendant to supply only such quantity of water as would be required to produce an average crop of five sacks of rice per acre, we cannot say such provision is manifestly illegal, for the reason that it might under certain conditions and circumstances be reasonable, and an ample remedy is afforded the consumer by having the reasonableness of such provision determined by the jury; but as to the provision limiting the amount of damages recoverable under all circumstances to four dollars per acre, there can be no warrant of law for such exaction. Unless such provisions in a contract have been freely and knowingly entered into by the person entitled to the use of water from such canal companies they will not be held as binding, but the entire contract will not be considered void where such illegal clauses may be separated from the body of the agreement.

Plaintiffs assigned as error in the Court of Civil Appeals two sections of the court's charge, upon the ground that they are contradictory in terms and confusing, and upon this assignment mainly that court reversed the case. The sections of the court's charge complained of are as follows:

2. "If you believe from a preponderance of the evidence that the defendant, through its president, R. E. Brooks, on the 10th day of February, 1907, entered into a verbal agreement with the plaintiffs to furnish them with sufficient water to make a full crop of rice on the said 350 acres of land described in plaintiffs' petition, and that

in order to do so that defendant would not have been compelled to discriminate against its other patrons who had contracted for water, and you further believe that the defendant company failed to supply the plaintiffs with sufficient water to make a full crop of rice, you will find for the plaintiffs such an amount in damages as will compensate them for their injury, if any. Should you find that the plaintiffs are entitled to recover damages, you are instructed that the measure of such damages is the difference in the market value of what the plaintiffs raised on the land and what they would have raised with sufficient water, less the cost of harvesting and preparing for market the additional quantity of rice.

"3. If you believe from the evidence that no agreement was made by the plaintiffs and the defendant on the 10th day of February, 1907, other than that the plaintiffs were to be furnished with water by the defendant for their rice crop and that they were to pay defendant $7.50 per acre for such water; and you further find that on account of drought or accidents' to defendant's canals over which defendant had no control, the defendant was not able to supply the plaintiffs with a sufficient quantity of water to make a full crop without discrimination against others who had contracted for water, and that the defendant, without negligence on its part, as negligence has been hereinbefore defined to you, actually furnished to plaintiffs their share of the water for their crop from its canals, and that said water from said canals was equally and impartially distributed between the plaintiffs and the other patrons of said canals who had applied to defendant for water, you will find for the defendant."

We are not able to detect any fault in the paragraphs of the learned trial judge's charge that could be complained of by plaintiffs. Taken as a whole it presents a comprehensive and proper construction of the irrigation act. It is true the court did not in section 2 limit defendant's failure to supply plaintiffs with sufficient water to make a full crop of rice to causes relating from drought or accident, but this could furnish no ground of complaint to plaintiffs, for the omission was favorable to them. There is no better rule of court charge construction than that the charge must be taken and construed as a whole in order to determine its correctness. International & G. N. Ry. Co. v. Stewart, 57 Texas, 170; East Line & R. R. Ry. Co. v. Smith, 65 Texas, 170; Kaufman & Runge v. Babcock, 67 Texas, 243; Rost v. Missouri Pac. Ry. Co., 76 Texas, 172; St. Louis & S. F. Ry. Co. v. McClain, 80 Texas, 98.

Having granted the writ of error in this case on the ground of dissent, it is before us for final disposition, and after considering all the errors complained of by defendant in error we do not think any good reason has been urged or shown why the judgment of the trial court should be disturbed. It is the order of this court that the judgment of the Court of Civil Appeals be reversed and that of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*