# MARCH, 1928

LONE STAR GAS COMPANY v. MUNICIPAL GAS COMPANY.

No. 4168.   Decided March 7, 1928.
(3 S. W., 2d Series, 790).

*Karl Griffith* and *Lawther, Pope, Leachman & Lawther,* for plaintiff in error. A court of equity will not decree specific performance of a contract requiring continuous acts involving skill, judgment and technical knowledge, or which require special skill, judgment and discretion. This is especially true where the contract is continuous in its nature and runs through a number of years or an indefinite period of time. 25 R. C. L., Sec. 117, pp. 303-304; Lone Star Salt Co. v. Texas Short Line Ry. Co., 99 Texas, 434; Beckham v. Munger Oil & Cotton Co., 185 S. W., 991; Carrico v. Stevenson, 135 S. W., 260; T. & P. Ry. Co. v. Marshall, 136 U. S., 393; Taylor v. Florida East Coast R. Co., 54 Fla., 635, 45 So., 574; Western Union Telegraph Co. v. Pennsylvania Co., 129 Fed., 849, 64 C. C. A., 285; Rutland Marble Co. v. Ripley, 10 Wallace, 339, 19 L. Ed., 955; Ross v. Union Pacific Ry. Co., 1 Woolw., 26, Fed. Cases No. 12080; Electric Lighting Co. v. Mobile, etc., R. Co., 109 Ala., 190, 19 So., 721, 55 A. L. R., 927; Stanton v. Singleton, 126 Cal., 657, 59 Pac., 146, 47 L. R. A., 334; Leonard v. Levee Dist. (Ark.), 94 S. W., 922; Welty v. Jacobs (Ill.), 40 L. R. A., 98; Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y., 60, 51 N. E., 408, 68 Am. St. Rep., 753, 43 L. R. A., 854; Beck v. Allison, 56 N. Y., 366, 15 Am. Rep., 430; Bienville Water Supply Co. v. City of Mobile, 33 L. R. A., 59; Williston on Contracts, Sec. 1433; Elliott on Contracts, Sec. 2282; 36 Cyc., 576, 584, 629.

The forfeiture provisions in the several contracts sued upon are valid and enforceable. 2 R. C. L., 361; Thompson v. Cobb, 65 S. W., 1090; Phinney v. Phinney, 4 L. R. A., 348; Blakeman v. Cooper, 4 L. R. A. (N. S.), 1074; 6 Page on Contracts, 6396; 6 R. C. L., 672.

*Chas. L. Harty* and *J. W. Hassell,* for defendant in error. It is now well settled that, when the chattels are such that they are not

obtainable in the market, or can only be obtained at great expense and inconvenience, and the failure to obtain them causes a loss which could not be adequately compensated in an action at law, a court of equity will decree specific performance. Equitable Gaslight Co. v. Baltimore Coal Tar & Mfg. Co., 63 Md., 285; Gloucester Isinglass & Glue Co. v. Russia Cement Co., 154 Mass., 92, 27 N. E., 1005, 12 L. R. A., 563, 26 Am. St. Rep., 214; Offutt v. .Offutt, 106 Md., 236, 67 Atl., 138, 12 L. R. A. (N. S.), 232, 124 Am. St. Rep., 491; Harris v. Perry, 215 Pa., 174, 64 Atl., 334; Richmond v. Dubuque, etc., R. R. Co., 33 Iowa, 480; Chehak v. Battles, 133 Iowa, 107, 110 N. W., 330, 8 L. R. A. (N. S.), 1130; Law v. Smith, 68 N. J. Eq., 81, 59 Atl., 327; Newton v. Wooley (C. C.), 105 Fed., 541.

An injunction against the breach of a contract is to a great extent a negative decree of specific performance. And, even if for sufficient reasons specific performance may be refused, the modern rule is that an injunction must be granted if the equities justify it. Leading English cases on this subject are Donnell v. Bennett, Law Reports, 22 Ch. Div., 835, decided in 1883 by Mr. Justice Fry, the author of Fry on Specific Performance, and Met. El. Supply Co. v. Ginder, 2 Ch. Div., 799; and this rule of granting an injunction, although specific performance may be denied, has been followed by the American courts generally. It is most frequently exercised in contracts for personal services which cannot be enforced by specific performance. A valuable collation of the American authorities on this subject is found in the note to Harrison v. Glucose Sugar Refining Co., 116 Fed., 304, 53 C. C. A., 492, 58 L. R. A., 915. Other cases in point are Western Union Tel. Co. v. Union Pacific Ry. Co. (C. C.), 3 Fed., 423; Chicago & Alton Ry. Co. v. N. Y. L. E. & W. R. R. Co. (C. C.), 24 Fed., 516; Alpers v. San Francisco (C. C.), 32 Fed., 503; Brush Swan Co. v. Brush El. Co. (C. C.), 41 Fed., 163; Colgate v. James T. White & Co. (C. C.), 180 Fed., 882; Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y., 60, 51 N. E., 408, 43 L. R. A., 854, 68 Am. St. Rep., 749; Dwight v. Hamilton, 113 Mass., 175; American Electric Works v. Varley, etc., Co., 26 R. I., 295, 58 Atl. 977.

We think it will be found from an examination of the leading authorities that two very distinctive exceptions to the rule contended for by the Lone Star Gas Company have been established, the first exception being, as stated in the case just quoted from, the inadequacy and incompleteness of the remedy at law; the second, which is also fully discussed in that case, is that, where a public

interest is involved in the subject matter of the contract, equity will not hesitate to specifically enforce it, even though it must supervise its orders. Edison Illuminating Co. v. Eastern Pennsylvania Power Co., 98 American, 652, 253 Pa., 457.

We think it is apparent from the records in this cause that from the very inception of the contract sued upon, the parties thereto had in mind but one definite purpose, which was to establish a relationship between them by the contracts sued upon, by which the properties of both could be made the means of the profitable transportation and delivery of natural gas from the several sources of supply then available, or which thereafter might be made available, through the pipe line systems of the Lone Star Gas Company to the consuming public in the various cities and towns enumerated in said contracts, and the education of the public in said cities and towns to the use of appliances which would cause them to substitute the use of natural gas for all other forms of fuel.

It is further apparent from the record that both of the parties to these contracts have throughout all of the years since the execution of each of them, made solicitations to the public in line with their original purpose, as stated in said contracts, with the result that 25,000 domestic consumers are dependent upon natural gas to be furnished under the provisions of these contracts for a fuel with which to heat their homes and cook their meals.

There can be no question but that there is a very vital public interest shown by the record in this case, which should appeal to the conscience of equity.

*Merritt & Leddy,* for City of McKinney, intervenor.

MR. JUSTICE PIERSON delivered the opinion of the court.

Plaintiff in error, Lone Star Gas Company, and defendant in error, Municipal Gas Company, entered into four certain contracts, of different dates, in which plaintiff in error contracted to furnish and supply to defendant in error all the gas needed and required for it to supply its customers in certain towns and cities of the State, and likewise defendant in error contracted to receive from plaintiff in error all gas needed to supply its customers in said towns and cities, and a basis of settlement was agreed to be a certain per cent of the gross proceeds of the sale of said gas to the consumers. Plaintiff in error had large holdings of gas leases, gas wells, and other gas properties in the counties of Clay and Palo Pinto, in the State of Texas, and defendant in error had gas franchises and pipe distributing

systems in numerous towns of the State for supplying the consumers of said cities and towns with natural gas, and in the contracts obligated itself to secure certain other franchises and to build distributing systems under them. The cities and towns and villages to be thus served by both companies included the following: Byers, Petrolia, Wichita Falls, Bellvue, Bowie, Sunset, Alvord, Decatur, Rhome, and other towns along the pipe line system leading to or adjacent to said cities and towns; also Sherman, Denison, Denton, and towns along that line; also McKinney; and again, the cities and towns of Corsicana, Hillsboro, Cleburne, Ennis, Waxahachie, Granbury, Itasca, Italy, Milford, West, and other cities and towns located on or adjacent to that line. The contracts contain various clauses and provisions looking to the performance of said contracts by each party, and among other things contain a right of forfeiture clause in the following language:

"If either party shall wilfully violate any of the covenants undertaken herein, or any of the duties imposed upon it by this contract, such wilful violation shall entitle the other party to terminate this contract, provided that the party desiring to terminate for such cause shall give the offending party at least thirty days' written notice specifying the particulars wherein it is claimed that there has been a violation hereof; and if at the end of such time the party notified has not removed the cause of complaint, or remedied the purported violation, then the termination of this contract shall be deemed complete."

On June 23, 1921, plaintiff in error addressed a communication to defendant in error, in which it declared a forfeiture of each of the four contracts, and in which the grounds of forfeiture of the first three contracts were stated to be:

"That your company has failed and refused to use reasonable diligence in maintaining and operating its various distributing systems in an efficient manner and has failed and refused to prevent an unreasonable leakage, wastage and escape of gas in said distributing systems and that there has been a failure to keep said distributing plants in good operating condition; and, further, that your company has failed and refused to make payment to this company for gas sold and purchased within the time specified by said contracts."

The ground of forfeiture of the fourth contract was stated to be:

"First, that your company has failed and refused to construct or even commence the construction of distributing plants in the towns

of Granbury, Itasca, Italy, Milford, and West; second, that your company has failed and refused to construct an adequate distributing plant in the city of Waxahachie, and has failed and refused to make extensions of the distributing systems now constructed in order to encourage the use of natural gas and secure as large a sale thereof as is possible; third, that your company has failed and refused to make payment to this company for gas sold and purchased, within the time specified in said contract."

Defendant in error, Municipal Gas Company, filed this suit in the District Court of Dallas County, in which it denied that it had breached any of the terms of any of the contracts, and prayed for an injunction restraining plaintiff in error from declaring a forfeiture of the contracts and from disconnecting its pipe lines from defendant in error's distributing systems in the different towns and cities, and in addition prayed for specific performance of its said contracts with plaintiff in error. With leave of the court, certain individual consumers of gas in certain of the cities mentioned, and the City of McKinney, intervened in said suit:

Upon hearing, the District Court sustained plaintiff in error's general demurrer and three special demurrers to defendant in error's petition, and likewise sustained a general demurrer to the petitions of interveners. Defendant in error and interveners declined to amend, and the case was dismissed by the trial court; from which actions defendant in error and interveners appealed to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas.

The Court of Civil Appeals in its very clear and able opinion found that the trial court had based its rulings upon four certain holdings, each of which it found to be erroneous, to-wit:

First. That the trial court erred in holding that defendant in error did not show any equity that would entitle it to relief, either in the form of an injunction restraining plaintiff in error from forfeiting its contracts, or for an affirmative decree enforcing specific performance thereof.

Second. That it erred in holding that the relief of specific performance could not be granted on the alleged ground that defendant in error's pleadings did not show that plaintiff in error is able to furnish the natural gas from the two fields mentioned.

Third. That the trial court erred in holding that specific performance could not be granted because the contracts extend over a long period of time, involve the exercise of personal skill and scientific knowledge and ability, and call for and require the expenditure of large sums of money.

Fourth. That the trial court erred in holding that specific performance could not be granted because the contracts disclose on their face that they are wanting in mutuality to the extent that specific performance of same could not be enforced against defendant in error.

The Court of Civil Appeals held that all of the necessary elements were shown in the petition to entitle defendant in error, Municipal Gas Company, to the relief it sought, and if upon hearing it sustained its allegations, it was entitled not only to an injunction restraining plaintiff in error from disconnecting its pipe lines from defendant in error's distributing systems and cutting off its supply of gas, but, in addition, was entitled, upon said proof, to a decree of specific performance of the contracts as alleged. It also held that the contention of plaintiff in error "that the State Legislature by valid enactment abrogated all existing contracts in reference to the sale and delivery of natural gas by a producing company to a distributing company, and that by reason thereof the courts are without power to enforce specific performance of these contracts, and that the parties must be relegated to the Texas Railroad Commission for a settlement of all differences that may arise under these contracts," was not well taken, and that the enactment of the Thirty-sixth Legislature known as the "Cox Pipe Line Bill" could have no effect upon these contracts, in that there was no issue as to rates charged the public and no issue of the adequacy of the service to the public involved, and that the jurisdiction of the Railroad Commission had not been invoked and in nowise attached to the subject matter of these contracts. The Court of Civil Appeals affirmed the judgment of the trial court dismissing the interveners, but as to defendant in error, Municipal Gas Company, it reversed and remanded the cause to the District Court with instructions. We approve the holdings of the Honorable Court of Civil Appeals, and deem it unnecessary to discuss or elaborate the principles involved, further than to refer to its opinion, which may be found in 259 S. W., 684.

For the further purposes of this opinion, we will designate Municipal Gas Company as defendant in error.

After disposing of the issues raised by the parties in the case, the Honorable Court of Civil Appeals made an additional holding of importance, and very vital to the final disposition of the case, which holding was as follows:

"However, as this case must be tried on its merits, and for the guidance of the court below, we hold that a court of equity would

not be warranted in denying a decree of specific performance on the ground that either party had violated a stipulation in the contract that gave to the other party the contract right of forfeiture. This necessarily follows because of the great interest that the public has in each party performing its obligations in these contracts. When the parties placed the forfeiture stipulations in these contracts, they were charged with the knowledge that necessarily the public interest would demand the faithful performance of the contracts, and that such a right could not be asserted as against this public interest. We therefore hold that, if appellee has suffered damage by reason of any failure of appellant to perform any of the stipulations of this contract, appellee should be remitted to its suit for damages rather than be allowed to exercise its right of forfeiture."

On rehearing the court discussed this holding more at length. We have carefully reviewed the authorities cited in the opinion on rehearing, and many others. We have no doubt of the correctness of the principle that a public service corporation can not by contract deprive itself of the power, or impair its power, to perform its duties to the public. And we may add that its contracts which primarily affect its services to the public must be made in view of said services, and not destructive thereof or detrimental thereto.

Corporations which are endowed by the government with special powers and privileges are charged with certain duties and obligations to the public, and in violation of public policy cannot bind themselves by contract to do that which would disable them from performing those duties and obligations, or compel them to subordinate such duties and obligations to their private interests. Gibbs v. Consolidated Gas Co. of Baltimore, 130 U. S., 396, 32 L. Ed., 979; 13 Corpus Juris, p. 444; Railway v. Morris, 67 Texas, 692, 4 S. W., 156; Raywood Rice, Canal & Milling Co. v. Erp & Wright, 105 Texas, 161, 146 S. W., 155; Elliott on Contracts, Vol. 1, p. 840, Secs. 575, 576; Thomas v. Railroad Co., 101 U. S., 71, 25 L. Ed., 950; Morawitz on Private Corporations, 2d Ed., Vol. 2, Sec. 657; Taylor on Private Corporations, 2d Ed., Sec. 304; Fletcher Cyclopedia Corporations, Vol. 3, Sec. 1614.

The rule is based upon the principle that special franchises and powers are granted to public service corporations, now more commonly called public utilities, in order that they may more efficiently serve the public, and this service is the consideration for the public grant.

Any provision of a contract of such a corporation which impairs its ability to perform such services is a violation of its contract with the State, is forbidden by public policy, and is therefore void. As said in Fletcher, Cyclopedia Corporations, Vol. 3, Sec. 1614:

"The same is true of an agreement which merely tends to obstruct such a corporation in the performance of its duties."

The consideration which engages our attention is whether the principle has application to the question before us and controls its disposition. Of this, also, we have no doubt.

The supplying of gas for domestic and industrial consumption is a business of a public nature, and when inaugurated constitutes a continuing public necessity, which cannot be met by going into the open market as for articles of necessity manufactured by individuals and ordinary corporations.

Plaintiff in error, Lone Star Gas Company, and defendant in error, Municipal Gas Company, are public service corporations. Art. 1435, Rev. Stats., 1925, authorizes their creation, and provides that:

"Gas * * * corporations shall have power to manufacture, transport, and sell gas * * * to individuals, the public and municipalities for light, heat, power and other purposes, and to make reasonable charges therefor; to construct, maintain and operate power plants and sub-stations and such machinery, apparatus, pipes * * * devices and arrangements as may be necessary to operate such lines at and between different points in this State; to own, hold and use such lands, right of way, easements, franchises, buildings and structures as may be necessary for the purpose of such corporation."

Art. 1436 confers upon them the right and power of eminent domain.

It is admittedly true that each is a public service corporation or public utility, and clothed with these extraordinary powers and privileges, and likewise charged with public duties and obligations consistent with and in keeping with the purposes of their creation and with their charters and franchises.

Under its charter powers the plaintiff in error built and constructed its pipe line over and through the counties and along by the cities, towns and villages of the State mentioned in this case, for the performance of its franchise purposes of transporting and selling gas and power to "individuals, the public and municipalities for light, heat, power, and other purposes." Likewise, defendant in error secured franchises in the cities, towns, and villages along these

courses, and built and constructed its distributing systems in said cities, towns and villages for the performance of its franchise purposes of transporting and selling gas and power to "individuals, the public, and municipalities, for light, heat, power, and other purposes." For the furtherance of these purposes these contracts between the two companies were entered into. Plaintiff in error and defendant in error joined together to perform a public service to the individuals, the public, and municipalities along the course of plaintiff in error's pipe lines, and they cannot breach or evade that service or duty that they have established and assumed by a forfeiture provision in a contract between themselves.

These two public service corporations by valid contracts have jointly undertaken to serve the public, the cities, and their citizens, with natural gas, and according to the terms of their mutual contracts for a definite length of time. Each has acted, and is acting, under this joint undertaking, and the consuming public is being served, and it is apparent from the pleadings that each is able and prepared to continue said services under their contracts for the stipulated period of time.

Plaintiff in error says that it "is not the grantee in any franchise granted by said municipalities, nor a party to any contract between said municipalities and Municipal Gas Company fixing the price to the consumers." That is only abstractly true. It is a party to a joint undertaking with defendant in error, by and through the means of the contracts in suit, to furnish gas to said municipalities and other consumers; and this by virtue of the privileges and powers of the charters of both companies. In these contracts it required defendant in error to carry on a campaign of education in the use of gas and gas appliances, and to induce as many as possible to adopt the use of gas for fuel, and to put in equipment for such use, and to make themselves dependent upon the performance of these contracts for their fuel. It stands in the same relation to these gas consumers as does defendant in error, Municipal Gas Company, in the matter of performing this public service to the consumers.

The Lone Star Gas Company undertook to serve the consumers of these various localities through the instrumentalities of the Municipal Gas Company. The Municipal Gas Company undertook to serve the consumers of these various localities through the instrumentalities of the Lone Star Gas Company. Neither can make use of a forfeiture or penalty clause of their contracts to defeat or avoid their duties to perform these public services. Under their mutual

undertaking they occupy the same position, for the terms of their contracts, as if one company were operating and serving this territory. The plaintiff in error made its contracts with defendant in error for the very purpose of supplying natural gas to these consumers, and defendant in error made its contracts with plaintiff in error for the same purpose, and the consumers are being served under this joint undertaking. Plaintiff in error's relation to these contracts, and through them to the consumers, together with its pipe line systems and defendant in error's distributing systems, fixes its public duties and obligations in the premises, and makes active and applicable the principle of public policy that, as a penalty, this right of forfeiture clause in the contracts cannot be invoked, but is unenforceable and void. As said by Mr. Chief Justice Fuller, in the case of Gibbs v. Consolidated Gas Co. of Baltimore, 130 U. S., at p. 411:

"But we are not concerned here with the question when, if ever, a corporation can cease to operate without forfeiture of its franchises, upon the excuse that it cannot go forward because of expense and want of remuneration. There is no evidence in this record of any such state of case, and, on the contrary, it appears that the cost of the manufacture of gas was largely below the price to be charged named in the stipulation between the parties. There is nothing upon which to rest the suggestion that the companies were unable to serve the consumers, while the record shows, on the other hand, that they simply desired to make larger profits on whatever gas they might furnish. Nor are we called upon to pass upon the validity generally of agreements. Here the contract was directly in the teeth of the statute, which expressly forbade the Equitable Gas-Light Company from entering into it. That prohibition declared the policy of the State as well as restrained the particular corporation."

These remarks are quite applicable to the contentions of plaintiff in error. Its chief complaint of defendant in error is that, under the arrangements between it and defendant in error, it suffers all the loss caused by the alleged leakage, waste, and inefficient operation of the distributing systems of defendant in error, and is not receiving as much profit on its gas as it is entitled to. If that be true, under the holdings herein it is relegated to its remedy in damages, rather than to the enforcement of the penalty of forfeiture, which would destroy its public service.

Plaintiff in error is not proposing to surrender its franchises, and when it declared a forfeiture of its contracts with defendant in error,

certainly that was not its purpose, but clearly and necessarily it was its purpose and intention summarily to cease supplying gas to consumers in the territory covered by the contracts. It cannot so lightly cease to perform its public duties and retain the special privileges and powers granted to it by the State. It cannot arbitrarily, or by virtue of a forfeiture clause in its contracts, cease to do that which the public is rightly depending on it to do.

To give validity to the right of forfeiture provision of their contracts, and permit either to forfeit under it, would impair, if not utterly destroy, said service which they jointly have undertaken for the periods of the contracts.

Under the authorities and principle announced, such a provision is void and unenforceable as against public policy. We approve the holding of the Court of Civil Appeals upon this issue also. Its judgment is in all things affirmed.