**RAILROAD COMMISSION OF TEXAS
et al., Appellants,**

v.

**CITY OF AUSTIN et al., Appellees.**

No. 12169.

Court of Civil Appeals of Texas,
Austin.

July 10, 1974.

**346**

John L. Hill, Atty. Gen., Rex H. White, Jr., Asst. Atty. Gen., Austin, for appellant Railroad Commission.

W. Robert Brown, Liddell, Sapp, Zivley & Brown, Frank J. Knapp, Butler, Binion, Rice, Cook & Knapp, Houston, Keys, Russell, Watson & Seaman, Hayden W. Head, Jr., Head & Kendrick, Corpus Christi, J. I. Worsham, Worsham, Forsythe & Sampels, Dallas, Dan Moody, Jr., Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellants.

Tom R. Scott, Bullock & Scott, Midland, and Charles G. King III, Bracewell & Patterson, Houston, for intervenor-appellants.

Don R. Butler, City of Austin, C. C. Small, Jr., Small, Craig & Werkenthin, Austin, and Jon C. Wood, San Antonio, for appellees.

PHILLIPS, Chief Justice.

The question presented by this appeal is whether the Railroad Commission of Texas has jurisdiction under Articles 6050 et seq., Vernon's Annotated Civil Statutes, to inquire into the effect on the public interest of transactions under which Lo-Vaca Gathering Company, a gas pipeline utility, is diverting substantial amounts of its reserve gas supply by entering into contracts with specific customers prior to and during periods when it is unable to fulfill its delivery obligations to the cities of Austin and San Antonio and to the Lower Colorado River Authority and, if the public interest so requires, to apportion the gas involved in such transactions among these cities and the Lower Colorado River Authority.

The Railroad Commission denied its authority to apportion the gas as requested by Austin, San Antonio, and the Lower Colorado River Authority and dismissed their application for want of jurisdiction.

On trial to the district court, the court reversed the Commission and ordered the application reinstated holding that the Railroad Commission has jurisdiction under Articles 6050 et seq., V.A.C.S., over all agreements, commitments, obligations, and transactions of a gas pipeline utility which affect its ability to discharge its obligations as a gas pipeline utility; hence, the Commission has jurisdiction to consider on its merits the application of the cities and the Lower Colorado River Authority and

to determine whether or not the matters complained of therein adversely affect the public interest and the Utility's ability to serve the public.

The Railroad Commission, represented by the Attorney General, and a number of intervenor corporations,[1] then perfected their appeal to this Court. We affirm the judgment of the trial court.

## I.

The caption of the Cox Act (now Art. 6050 et seq., V.A.C.S.) describes the law as: "An Act defining and declaring certain natural gas pipe lines and business public utilities as virtual monopolies and subjecting same to the power and jurisdiction of the Railroad Commission of Texas to regulate and enact rules, regulations, orders and decisions for the government and conduct of the business of the same . . ." Acts 1920, 36th Leg., 3d C.S., ch. 14, p. 18.

Sec. 2 of the original Act states: "It is declared that the operation of gas pipe lines to which this Act applies for buying, selling, transporting, producing or otherwise dealing in natural gas is a business which in its nature and according to the established method of conducting the business is a monopoly, in the mode of the conduct of which the public is interested, and as such is subject to regulation by law . . ." (Art. 6051)

The present Act (Art. 6050 et seq., V.A.C.S.) specifically declares that all orders and agreements of any such gas utility establishing and prescribing prices, rates, rules and regulations and conditions of service are subject to review, revision and regulation by the Commission and contains an unequivocal prohibition against discrimination by such gas utilities against any

person, place or corporation either in apportioning the supply of natural gas or its charges therefor. (Arts. 6054, 6057)

It requires the Commission to ". . . establish fair and equitable rules and regulations for the full control and supervision of said gas pipe lines and all their holdings pertaining to the gas business in all their relations to the public . . ." (Art. 6053, sec. 1)

Article 6053 directs the Commission to ". . . regulate and apportion the supply of gas between towns, cities, and corporations, and when the supply of gas controlled by any gas pipe line shall be inadequate, the Commission shall prescribe fair and reasonable rules and regulations requiring such gas pipe lines to augment their supply of gas . . ." (sec. 1)

No statement of the law could be clearer. In Trimmier v. Carlton,[2] Judge McClendon, speaking for this Court, stated that where there is nothing to indicate that the legislature did not intend exactly what it said, its language is to be literally construed. The directive is simple, the mandate plain. The Railroad Commission has no recourse but to comply.

The Cox Act as enacted in 1920 set the pattern for the regulation of gas utilities by the State. Section 1 of Article 6053 derives from Section 3 of the Act of 1920, and was placed in its present form as amended by the Legislature in 1939. (Acts 1939, 46th Leg., p. 501, Sec. 1.) At that time gas was plentiful and, in many instances, was being flared and wasted into the atmosphere throughout the State of Texas. It is, perhaps, an interesting aside that the wisdom of the Legislature in enacting Articles 6050 et seq., V.A.C.S., was prophetic of the fact situation presently confronting the appellees in this case.

---

1. The intervenors are: El Paso Natural Gas Company, American Smelting and Refining Company, Lo-Vaca Gathering Company, Southwestern Oil and Refining Company, Texas Electric Service Company, Amoco Gas Company, Coastal States Gas Producing Company, E. I. du Pont de Nemours Company, Inc., Clajon, Inc., Texas Power and Light Company, Dallas Power and Light Company, Texas Utilities Fuel Company, Dow Chemical Company.

2. 264 S.W. 253, 263 (Tex.Civ.App.1924, affirmed 116 Tex. 572, 296 S.W. 1070, 1927).

## II.

The Railroad Commission, as appellant, joined by the intervenor corporations, have assigned error to the judgment of the trial court by a multitude of points, all of which we overrule. For the purposes of this opinion, these points can be divided into several principal questions.

First comes the question concerning certain gas contracts entered into between Lo-Vaca Gathering Company and the other intervenor corporations. Here the complaint is made that pursuant to the above-mentioned contracts title to the gas is in certain of the intervenors and that the judgment of the trial court erroneously clothes the Commission with authority to determine the legal question of title and to abrogate the contractual rights attendant thereto.

An examination of the contracts discloses that, in the main, each transaction is still executory on the part of Lo-Vaca and contains future service conditions performable by the Lo-Vaca pipeline system to deliver the gas involved. These transactions fall into three categories: first, transactions where Lo-Vaca had certain specific gas reserves under contract and agreed to sell the gas from such reserves exclusively to a particular party; second, transactions whereby Lo-Vaca had control of certain specific gas reserves which it could have had for the benefit of all its customers but which, for substantial fees, were channeled exclusively to particular parties; third, transactions where Lo-Vaca bought and paid for volumes of gas under so-called "banking" arrangements which called for redelivery to particular parties of equivalent volumes out of its general system.

■ Under each of these transactions nothing more has taken place than the segregation of specific reserves for the special benefit of a particular customer. We cannot accept intervenors' contention that, because these transactions take the form of "assignments" or "sales" of re-

serves, the parties have put this gas beyond the reach of the curtailment jurisdiction of the Railroad Commission. This would allow the intervenors to allocate to themselves significant portions of these reserves for their own exclusive benefit. When such transactions impair Lo-Vaca's ability to serve its general system customers, the impermissible discrimination appears which requires regulation by the Commission.

■ We are well aware that the Commission cannot adjudicate title or contractual rights. The authorities in this respect are legion and need not be cited here. However, this does not mean that the Commission cannot inquire into the effect of these transactions upon the ability of Lo-Vaca to perform its duty to the public and regulate the conditions of service under the contracts involved to the extent required by the public interest. The intervenors were well aware that they were dealing with a natural gas utility when they dealt with Lo-Vaca and they were aware that they were dealing with the very subject matter of Lo-Vaca's public service obligation to furnish natural gas to the public served by its system.

Authority for our position in this case was established in Texas as early as 1887 when the State Supreme Court in Gulf, C. & S. F. Ry. Co. v. Morris, 67 Tex. 692, 4 S.W. 156 (1887), held it well settled that corporations organized for public purposes cannot by contract of sale, lease or otherwise, render themselves incapable of performing their duties to the public or in any way absolve themselves from the obligation which forms the main consideration for giving them corporate existence, unless this be done by consent of the State, given through the charter or in some other manner.

■ In City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965), the Supreme Court of the United States held that it does not matter that legislation appropriate to the public inter-

est has the result of modifying or abrogating contracts already in effect. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The Court further held that the economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.[3]

■ Consequently, we hold that whatever rights or obligations were granted or imposed under the agreements, commitments, obligations or transactions that intervenors entered into with Lo-Vaca were granted or imposed subject to the rights of the State as set out in Article 6050 et seq., V.A.C.S., and are subject to the Commission's regulatory power thereunder. High Plains Natural Gas Company v. Railroad Commission of Texas, 467 S.W.2d 532 (Tex.Civ.App.1971, writ ref. n. r. e.); Lone Star Gas Company v. Municipal Gas Company, 117 Tex. 331, 3 S.W.2d 790 (1928).

■ Next, appellant and intervenor corporations assign error to the refusal of the trial court to abate the case until the Commission disposed of its Gas Utilities Docket No. 520 which, they contend, might provide relief to appellees. This docket was described as a proceeding whereby the Commission would determine whether the available statewide supply of natural gas could be voluntarily shared or apportioned or whether a mandatory statewide apportionment program was needed. The trial court correctly concluded that the existence of Docket No. 520 did not warrant the refusal by the Commission to exercise juris-

diction of appellees' application. The Commission did not consolidate Docket No. 510 and Docket No. 520 but, on the contrary, dismissed the application in Docket No. 510 for want of jurisdiction, leaving appellees no remedy in either Docket No. 510 or Docket No. 520.

■ We hold that the trial court was also correct in overruling appellant's and intervenors' plea in abatement wherein the dismissal of this cause was sought because of the pendency of a suit in Cause No. 947,276, styled Pennzoil Pipeline Company v. Coastal States Gas Producing Company et al., filed in the 113th Judicial District Court of Harris County, Texas. The contention in support of this motion was that the validity of certain Lo-Vaca-intervenor contracts were in issue in the Harris County case. Again, the trial court correctly concluded that the issues before that forum were questions of law completely unrelated to the issue at bar, that is, the jurisdiction of the Commission to apportion gas under Article 6050 et seq., V.A.C.S.

We also hold that our decision in this case does not conflict with our holding in Railroad Commission v. United Gas Pipe Line Company, 358 S.W.2d 907 (Tex.Civ. App.1962 writ ref. n. r. e.). In that case, United Gas Pipeline requested the Railroad Commission to hold a gas purchase contract between the City of San Antonio and Alamo Gas Supply Company null and void. This Court correctly held that the Commission had no statutory authority to void contracts. This was a legal question for a court's determination similar to that now before the Harris County district court in *Pennzoil* cited above.

■ The trial court was correct in refusing to make findings of fact inasmuch as

---

3. In this connection also see: Gibbs v. Consolidated Gas Company, 130 U.S. 396, 9 S.Ct. 553, 32 L.Ed. 979 (1889); Raywood Rice Canal & Milling Company v. Erp, 33 Tex. Civ.App. 545, 146 S.W. 155 (Tex.1912); Railroad Commission v. Mackhank Petroleum Company, 186 S.W.2d 351 (Tex.Civ.App. 1945) affirmed in part and reversed in part on other grounds, 144 Tex. 393, 190 S.W.2d 802 (1945); Municipal Gas Company v. Lone Star Gas Company, 259 S.W. 684 (Tex.Civ. App.1924, affirmed 117 Tex. 331, 3 S.W.2d 790); State v. Public Service Corporation of Texas, 88 S.W.2d 627 (Tex.Civ.App.1935, writ ref.).

the question before it was one of law. At this stage of the proceeding any facts to be found are within the purview of the Railroad Commission. Wylie Independent School District v. Central Education Agency, 488 S.W.2d 166 (Tex.Civ.App.1972, writ ref. n. r. e.).

Finding no error in the judgment of the trial court, it is in all things affirmed.