NUMBER 13-02-094-CV

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG





COASTAL MART, INC. AND COASTAL
MARKETS, LTD., D/B/A MAVERICK MARKETS,                  Appellants,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY,                   Appellee.




On appeal from the 377th District Court
of Victoria County, Texas.




CONCURRING OPINION

Before Justices Yañez, Castillo, and Garza
                       Concurring Opinion by Justice Castillo

         I concur with the majority's decision to remand. I write separately to explain
the reasons I would affirm in part and reverse and remand in part. 
         This is a contractual indemnity case. By four issues, appellants Coastal Mart,
Inc. and Coastal Markets, Ltd., d/b/a Maverick Markets (collectively, "Coastal")
contend the trial court erred in granting summary judgment to appellee Southwestern
Bell Telephone Company ("SWBT"). Coastal asserts: (1) SWBT is contractually
obligated to indemnify Coastal in connection with a wrongful-death lawsuit that
alleged Coastal and SWBT were negligent in the design, placement, operation, and
maintenance of public pay telephones in front of a convenience store operated by
Coastal (the "Claim"); (2) SWBT is contractually obligated to provide Coastal with
insurance and a defense against the Claim; (3) SWBT acted in bad faith; and (4) SWBT
breached its agreement. 
I. HISTORY OF THE CASE
         Between January of 1976 and September of 1979, SWBT installed three public
pay telephones at a Maverick Market convenience store in Victoria, Texas. Effective
May 1, 1995, Maverick Markets, Inc. assigned to Coastal all rights and obligations as
lessee of the store's premises. In connection with the lease assignment, Coastal and
SWBT executed an agreement (the "Agreement") that provided in paragraph 9 that:
SWBT shall indemnify and hold COASTAL, its agents, employees,
officers, and directors free and harmless from and against any and all
claims, liabilities, losses, liens, demands, damages and causes of action
of every character and kind, including without limitation, judgments,
penalties, interest, fines, assessments, court costs, and any legal fees
incurred in the defense of same (including attorney's fees incurred in
enforcing this indemnity) which COASTAL may at any time suffer, incur
or sustain, arising from or connected with SWBT's obligations hereunder,
including without limitation:
 
A.personal injury, death and/or property damage, regardless of the
joint or concurrent negligence of COASTAL; and
 
B.any negligent act or omission and/or intentional or willful
misconduct of SWBT. . . .

Paragraph 19 of the Agreement provided: 
 
SWBT shall maintain or shall require and be held responsible for ensuring
that its contractors and agents maintain at all times during the term of
this agreement insurance . . . to protect SWBT and COASTAL from and
against all claims, demands, and causes of action arising by reason of
SWBT's access to Coastal's Premises. . . . 

         On June 6, 1995, six-year-old Blanche Esparza was in front of an SWBT pay
telephone at Coastal's convenience store in Victoria. A drunk driver careened his truck
through the store's parking lot and struck the child. The truck pinned the child against
the pay phone's enclosure, severely injuring her. Blanche died as a result. 
         On June 22, 1995, Guadulpe Ordonez, Blanche's father, filed suit against
Coastal, asserting wrongful death and survivorship claims. On June 6, 1997, Ordonez
added SWBT as a defendant. On March 20, 2000, Maria Esparza, Blanche's mother,
joined the lawsuit as a plaintiff. The Ordonez-Esparza family contended that Coastal
and SWBT were negligent in not installing barriers between the parking lot and the pay
telephones. Coastal demanded that SWBT indemnify it and provide a defense against
the Claim. SWBT refused. Coastal defended itself through the conclusion of the Claim
and sought indemnification and insurance benefits from SWBT pursuant to the
Agreement. SWBT again refused. Coastal now claims that SWBT breached the
Agreement by not indemnifying it and refusing to provide Coastal insurance coverage
and a defense against the Claim. 
         Coastal and SWBT both moved for summary judgment. See Tex. R. Civ.
P. 166a(c), (i). The trial court granted summary judgment to SWBT and denied
Coastal's motion. 
 
II. SUMMARY-JUDGMENT ANALYSIS
A. Summary-Judgment Grounds
         In a traditional motion for summary judgment, Coastal asserted that: (1) SWBT
is contractually obligated by paragraph 9 of the Agreement to indemnify Coastal and
hold it harmless from the Claim; (2) SWBT is contractually obligated by paragraph 19
of the Agreement to provide Coastal with insurance and a defense against the Claim;
(3) SWBT, which is self-insured, acted in bad faith when it refused to provide
insurance benefits and payment to Coastal for the sums Coastal expended in settling
the Claim; and (4) SWBT breached the Agreement by not indemnifying it and in not
providing insurance benefits and a defense. See Tex. R. Civ. P. 166a(c). SWBT
brought its own motion for summary judgment on Coastal's contractual indemnity
claims, asserting both traditional and no-evidence grounds. See Tex. R. Civ.
P. 166a(c), (i). 
         In the traditional portion of its summary-judgment motion, SWBT asserted that:
(1) it had no obligation to install bumper posts or barriers at Coastal's convenience
store; (2) SWBT had no obligation under the Agreement to ensure the safety of
Coastal's premises; (3) SWBT did not select the location of the phones at the
convenience store; (4) SWBT did not design, configure, construct, or install the store
premises; and (5) the absence of bumper posts was not a legal cause of Blanche's
death. The no-evidence portion of SWBT's motion asserted in its entirety: 
To prevail on its claim for contractual indemnity, Coastal must
prove "the happening of the occurrence for which indemnity was
promised." W. Dorsaneo, supra at 291-81 [sic]. Here, this means that
Coastal must prove that Ordonez and Esparza have asserted claims
"arising from or connected with SWBT's obligations" under the
Agreement. Agreement, at ¶9. 
 
SWBT is entitled to a "no-evidence" summary judgment because
there is no evidence that SWBT had an obligation to: (1) install bumper
posts or barriers at the Store; (2) ensure the safety of Coastal's premises;
(3) select or approve the location of the phones at the Store; or
(4) design, configure, construct or install the building, sidewalk, parking
lot or ramp on the premises. Further, as already discussed, the absence
of bumper posts was not a legal cause of Blanche's death. Pursuant to
Rule 166a(i) of the Texas Rules of Civil Procedure, the burden now shifts
to Coastal to come forward with evidence that raises a genuine issue of
material fact on the challenged element. Absent such a showing, SWBT
is entitled to judgment on Coastal's contractual indemnity claim as a
matter of law. 

B. Summary-Judgment Standards of Review
          On appeal, the standard of review for the grant of a motion for
summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. Tex. R. Civ. P. 166a(i), (c); Ortega v. City Nat'l
Bank, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on
reh'g).  The difference in relative burdens between the parties in the two types of
summary-judgment motions is significant. Id. Determination of the nature of the
motion for summary judgment under analysis is critical. Id. Accordingly, I first
address how to review both parties' motions. 
          Here, Coastal brought its motion for summary judgment on its claim for
contractual indemnity on traditional grounds. On the other hand, SWBT asserted that
it brought its motion under both traditional and no-evidence grounds. SWBT filed
"unified summary judgment exhibits" applicable to another pending motion and to its
motion for summary judgment on Coastal's contractual indemnity claim. I note that
the mere existence of evidence attached to a no-evidence summary-judgment motion
is not sufficient to allow the court to disregard the no-evidence motion. See Binur v.
Jacobo, 135 S.W.3d 646, 651 (Tex. 2004) (holding that evidence attached to no-evidence motion shall not be considered but motion should not be disregarded or
treated as traditional motion). However, SWBT's no-evidence motion merely reiterated
the grounds it asserted in its traditional motion. The no-evidence portion of SWBT's
motion contained no argument, analysis, or case law.


 Even so, "[i]f a motion clearly
sets forth its grounds and otherwise meets Rule 166a's requirements, it is sufficient." 
See Binur, 135 S.W.3d at 651. Accordingly, I would separately analyze SWBT's
traditional and no-evidence motions. 
          The function of summary judgment is to eliminate patently unmeritorious
claims and defenses, not to deprive litigants of the right to a jury trial. Alaniz v.
Hoyt, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.). In both
traditional and no-evidence summary-judgment motions, we review the evidence "in
the light most favorable to the nonmovant, disregarding all contrary evidence
and inferences." See KPMG Peat Marwick v. Harrison County Housing Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1995); Branton v. Wood, 100 S.W.3d 645, 646 (Tex.
App.–Corpus Christi 2003, no pet.). The movant bears the burden of showing both
no genuine issue of material fact and entitlement to judgment as a matter of law.
Hoyt, 105 S.W.3d at 345. We affirm a trial court's ruling on a summary-judgment
motion if any of the theories advanced in the motion are meritorious. State Farm Fire
& Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). We review a summary
judgment de novo to determine whether a party established its right to prevail as a
matter of law. Provident Life and Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216
(2003); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Ortega,
97 S.W.3d at 771. 
1. Traditional Motion under Rule 166a(c)
         The non-movant has the burden to respond to a traditional summary-judgment
motion if the movant conclusively: (1) establishes each element of its cause of action
or defense; or (2) negates at least one element of the non-movant's cause of action
or defense. Hoyt, 105 S.W.3d at 345. Thus, summary judgment for a defendant is
proper if the defendant disproves at least one element of each of the plaintiff's claims
or affirmatively establishes each element of an affirmative defense to each claim. Id.
2. No-Evidence Motion under Rule 166a(i)
         We review a no-evidence motion for summary judgment under the same legal-sufficiency standard as a directed verdict. See Tex. R. Civ. P. 166a(i); see also
Branton, 100 S.W.3d at 646. The movant must assert that there is no evidence of
an essential element of a particular claim or defense which the nonmovant would have
the burden of proving at trial. Branton, 100 S.W.3d at 647. By definition, the movant
does not produce any evidence. See Tex. R. Civ. P. 166a(i). Rather, the nonmovant
must produce sufficient evidence to raise a genuine issue of material fact as to the
challenged elements. Id.; Branton, 100 S.W.3d at 647. We consider any quantum
of evidence greater than a scintilla sufficient to raise a genuine issue of material fact. 
Branton, 100 S.W.3d at 647. More than a scintilla of evidence exists when the
proffered evidence "would enable reasonable and fair-minded people to differ in their
conclusions." Id. Conversely, less than a scintilla of evidence exists when the
proffered evidence merely "creates a . . . surmise or suspicion of a fact" as to the
material elements. Id. 
3. Dual Summary-Judgment Motions
         When: (1) both sides move for summary judgment; and (2) the trial court grants
one motion and denies the other, we review both parties' summary-judgment evidence
and determine all questions presented. FM Props. Operating Co. v. City of Austin,
22 S.W.3d 868, 872 (Tex. 2000); Frost Nat'l Bank v. L & F Distribs.,
122 S.W.3d 922, 929 (Tex. App.–Corpus Christi 2003, pet. filed). Since
each party is a movant, the burden is the same for both: to establish
entitlement to summary judgment by conclusively proving all the elements of the
cause of action or defense as a matter of law. Buccaneer's Cove, Inc. v. Mainland
Bank, 831 S.W.2d 582, 583-84 (Tex. App.–Corpus Christi 1992, no writ). Neither
may prevail because of the failure of the other to discharge its burden. Id. at 584. 
Where the only issue both movants presented to the trial court was a question of law,
we render the judgment the trial court should have rendered. Tex. R. App. P. 43.2(c);
Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988). However, each party must
carry its own burden as the movant and, in response to the other party's motion, as
the non-movant. Swoboda v. Wilshire Credit Corp., 975 S.W.2d 770, 775 (Tex.
App.–Corpus Christi 1998), disapproved on other grounds, Holy Cross Church of God
in Christ v. Wolf, 44 S.W.3d 562, 570 (Tex. 2001). Thus, when a summary judgment
denies one party's motion and grants another's, and both parties fail to carry their
burden of proving no genuine issue of material fact and entitlement to judgment as a
matter of law, we also have the authority to reverse the judgment and remand the
case to the trial court for further proceedings. Tex. R. App. P. 43.2(d), 43.3(a); see
Swoboda, 975 S.W.2d at 775; see, e.g., Garner v. Redmond, No. 13-02-00658-CV,
2004 Tex. App. LEXIS 7030, *16 (Tex. App.–Corpus Christi, Aug. 5, 2004, pet.
denied) (memorandum opinion) (Yañez, J., dissenting) ("[A] genuine issue of material
fact exists that would preclude summary judgment for either party."); Ross v. Access
Healthsource, Inc., No. 08-03-00096-CV, 2003 Tex. App. LEXIS 10232, *17 (Tex.
App.–El Paso, Dec. 4, 2003, pet. denied) (memorandum opinion) (remanding for
resolution of fact issue where both parties had moved for summary judgment). 
         The parties' arguments and briefing below and before this Court present
a threshold question: Is either party entitled to judgment as a matter of law on
the issue of whether Blanche Esparza's death arose out of or in connection
with SWBT's obligations under the Agreement? See Boyd v. Amoco Prod. Co.,
786 S.W.2d 528, 530 (Tex. App.–Eastland 1990, no writ). I would first analyze the
traditional motions for summary judgment. 
C. Disposition of Coastal's and SWBT's Traditional Summary-Judgment Motions
1. Interpretation of the Parties' Indemnity Agreement
a. The Law of Contractual Indemnity
         A contract of indemnity is an original obligation between the contracting
parties, independent of other agreements. Joseph Thomas, Inc. v. Graham,
842 S.W.2d 343, 346 (Tex. App.–Tyler 1992, no writ). Indemnity contracts
are construed under the usual rules of contract construction. Gulf Ins. Co. v.
Burns Motors, Inc., 22 S.W.3d 417, 424 (Tex. 2000); Assoc. Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998). 
         The primary concern of a court in construing a written contract is to ascertain
the true intent of the parties as expressed in the instrument. Gulf, 22 S.W.3d at 424;
Kelly-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). When
determining the parties' intent, all parts of the contract are to be considered, as are the
circumstances surrounding the contract's formation. Transcon. Gas Pipeline Corp. v.
Texaco, Inc., 35 S.W.3d 658, 665 (Tex. App.–Houston [1st Dist.] 2000, pet. denied);
Crown Centr. Petroleum Corp. v. Jennings, 727 S.W.2d 739, 741 (Tex.
App.–Houston [1st Dist.] 1987, no writ). 
         If a written contract is worded so that it can be given a definite or certain
legal meaning, it is not ambiguous. Gulf, 22 S.W.3d at 424; Kelly-Coppedge,
980 S.W.2d at 464. If, however, the language of a contract is subject to two or more
reasonable interpretations, it is ambiguous. Kelly-Coppedge, 980 S.W.2d at 464-65;
Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per
curiam). Mere disagreement by the parties over the meaning of a contract provision
does not make it ambiguous. Kelly-Coppedge, 980 S.W.2d at 465; GTE Mobilnet of
S. Tex. v. Telecell Cellular, Inc., 955 S.W.2d 286, 289 n.1 (Tex. App.–Houston [1st
Dist.] 1997, writ denied) (op. on reh'g).  
b. The Scope of the Parties' Contractual Indemnity Agreement
         SWBT does not dispute that it entered into an enforceable indemnity agreement
with Coastal to indemnify Coastal for any claims for "personal injury, death and/or
property damage, regardless of the joint or concurrent negligence of Coastal."


 Rather,
at issue is the correct interpretation of the phrase "arising from or connected with
SWBT's obligations" under the Agreement. In other words, the legal issue is whether
Blanche's death arose out of or is connected with SWBT's obligations under the
Agreement so as to trigger its contractual indemnity of Coastal. See Boyd,
786 S.W.2d at 530. Thus, our analysis of the contract question necessarily requires
a discussion of SWBT's tort standard of care, both as a public utility and as created
by the obligations SWBT assumed under the Agreement. (1) SWBT's Duties as a Public Utility
         SWBT is a public utility. See Tex. Util. Code Ann. § 51.002 (8) (Vernon 1997)
(defining "public utility" as "a person . . . that owns and or operates for compensation
in this state equipment or facilities to convey, transmit, or receive communications
over a telephone system as a dominant carrier."). To permit them to better serve the
public, Texas law long has accorded special privileges and powers to public utilities. 
See Lone Star Gas Co. v. Mun. Gas Co., 3 S.W.2d 790, 792 (Tex. 1928); Military
Highway Water Supply Corp. v. Morin, 114 S.W.3d 728, 733 (Tex. App.–Corpus
Christi 2003, pet. filed). "It is the policy of this state to protect the public interest in
having adequate and efficient telecommunications service available to each resident
of this state at just, fair, and reasonable rates." Tex. Util. Code Ann. § 52.001
(Vernon 1997). The privileges enjoyed by public utilities carry with them duties and
obligations consistent with the purpose of their creation. Lone Star Gas Co., 3 S.W.2d
at 792; Morin, 114 S.W.3d at 733. A public utility has a duty to exercise ordinary
and reasonable care in performing its functions. Morin, 114 S.W.3d at 733; First
Assembly of God, Inc. v. Tex. Utils. Elec. Co., 52 S.W.3d 482, 491 (Tex.
App.–Dallas 2001, no pet.). The degree of care is commensurate with the danger. 
Morin, 114 S.W.3d at 734; First Assembly of God, 52 S.W.3d at 491. The
commensurate-with-the-danger standard does not impose a duty higher than that of
ordinary care. Morin, 114 S.W.3d at 734; First Assembly of God, 52 S.W.3d
at 491-92. Rather, it fully defines what constitutes ordinary care under the facts
presented. Morin, 114 S.W.3d at 734; First Assembly of God, 52 S.W.3d at 491-92.
Thus, in performing its functions, a public utility must use reasonable care and
prudence to prevent injury at places where others have the right to go for work,
business, or pleasure. Morin, 114 S.W.3d at 734; see Tex. Utils. Elec. Co. v. Gold
Kist, Inc., 817 S.W.2d 749, 752 (Tex. App.–Eastland 1991), rev'd on other grounds,
830 S.W.2d 91 (Tex. 1992). 
(2) SWBT's "Obligations" under the Agreement
         The Agreement imposed on SWBT the "obligation . . . to install, operate,
maintain and service public telephone(s) and associated equipment, including pay
telephones, enclosures, associated wiring and hardware . . . at Coastal's specified
premises. . . ." Further, "[t]he location of the Public Telephone Equipment at each
premises shall be mutually agreed upon between Coastal and SWBT in order to satisfy
considerations of safety and discouragement of undesirable utilization." Also, "[i]f any
Public Telephone Equipment appears to constitute a hazard [or] nuisance . . . SWBT
will be allowed to make adjustments and modifications in an attempt to alleviate the
problem." I would conclude that, on this record, SWBT, as a public utility, owed in
performing its obligations under the Agreement a duty of care to the general public to
prevent injury to users of its public telephone equipment at Coastal's premises. See
Morin, 114 S.W.3d at 734; see also Gold Kist, 817 S.W.2d at 752. Thus, if the
Ordonez-Esparza family's negligence claim against SWBT and Coastal arose from or
is connected with SWBT's obligations under the Agreement, SWBT must indemnify
Coastal. 
         Texas law requires proof of three familiar elements to sustain a cause of action
for negligence: (1) a legal duty owed by one party to another; (2) a breach of that
duty; and (3) damages proximately caused by the breach. Morin, 114 S.W.3d at 733
(citing Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002)). Proximate cause has
two components: (1) cause in fact; and (2) foreseeability. Morin, 114 S.W.3d at 733 
(citing Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995)).
The foreseeability component of proximate cause demands proof the defendant
reasonably should have anticipated the danger to others created by its conduct. 
Morin, 114 S.W.3d at 737 (citing Boys Clubs of Greater Dallas, 907 S.W.2d at 477).
In the context of proximate cause, foreseeability requires only the general danger to
be foreseeable, not the precise sequence of events that produced the harm. Morin,
114 S.W.3d at 737 (citing Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785
(Tex. 2001)). I turn to the gravamen of the parties' dispute: whether Blanche's death
under the facts of this case was foreseeable. 
(3) Proximate-Cause Foreseeability
         SWBT contends that the premises were safe, arguing that the driver's criminal
conduct was the sole proximate cause of Blanche's death and, as a result, that the
absence of bumper guards was not the legal cause. However, constructive knowledge
of similar incidents may satisfy the foreseeability element of causation, even when the
incident resulted from the criminal conduct of a third party. See Mr. Prop. Mgmt. Co.,
690 S.W.2d at 551 (holding that specific knowledge of previous rapes in area was not
necessary for rape to be foreseeable when defendant had knowledge of high crime rate
of area generally). 
         According to Howard Castille, a SWBT employee, SWBT knew of potential
hazards associated with its public pay telephones at convenience stores: 
Q: Are you personally familiar with any instances where a vehicle
has collided with either the telephone equipment or a person using
the telephone equipment? 
 
A: Yes.
 
Q: Can you tell me of those instances, please?
 
A: An instance here in San Antonio. I do not recall the time
frame. Early '80s, late '80s.
 
Q: What else?
 
A: An instance in the Rio Grande Valley.
 
Q: When was that?
 
A: Late '80s, I believe, possibly early '91 – early '90s.
 
Q: What else?
 
A: This case and one other in July of '97.
 
Q: Where was that?
 
A: That was at a Maverick Market in Corpus Christi.
 
Q: In July of '97?
 
A: Yes. I believe it was July of '97.
 
Q: Are you familiar with an incident that occurred in Victoria in
1991 in which a person was hit – alleged he was hit in front of a
– while using a phone?
 
A: Only from the documents that I reviewed in this case. 

***
 
Q: And how do you decide or how does Southwestern Bell decide
– decide where to put the bumper posts?
 
A: They're for the most part again, they're depending on the size
of the equipment. They are installed close to the equipment
because there are bumper posts to prevent a car from bumping
into the equipment.

***
 
Q: You don't know of any instance where bumper posts are
placed around those phones or adjacent to those phones other
than when a customer has asked you to do that?
 
A: Oh, yes, I do.
 
Q: And can you describe instances?
 
A: Well, I'm familiar with one in '97. 
 
Q: What was that?
 
A: That was the Maverick Market at Old Brownsville Road. 
 
Q: And what city is that in?
 
A: Corpus Christi. 
 
Q: So bumper posts were placed around the phone there?
 
A: They were placed in front of the phone, yes.
 
Q: And that was not at the customer request? 
 
A: That was with agreement with the customer. 
 
Q: And who requested that?
 
A: We initiated the request. 
 
Q: For what reason?
 
A: I had been contacted by my first line supervisor there. There
had been an accident at that location, and he had made the
recommendation to me that we should consider installation of
bumper posts.


 

* * *
 
Q: And why, if you know, was that request initiated? 
 
A: Because of an accident that occurred there. 

         Further, the summary-judgment evidence indicates that Maverick Markets,
Coastal's predecessor in interest, asked SWBT to erect barriers in front of its public
pay telephones at all of its locations, including the convenience store in Victoria
involved in this case. SWBT refused. SWBT counters that it determined that public
safety did not require barriers at every location and asked Maverick Markets to provide
a list of the stores where barriers actually were needed. Maverick Markets did not get
back to SWBT with the list.     I find published and unpublished Texas cases of
incidents similar to that which occurred here dating back almost fifty years. See, e.g.,
Gonzalez v. Stop N Go Mkts., No. 14-94-01029-CV, 1995 Tex. App. LEXIS 2685
(Tex. App.–Houston [14th Dist.] Nov. 2, 1995, no writ) (not designated for
publication); Brookshire Bros. v. Lewis, 911 S.W.2d 791 (Tex. App.–Tyler 1995, writ
denied); Hendricks v. Todora, 722 S.W.2d 458 (Tex. App.–Dallas 1986, writ ref'd
n.r.e.); Miller v. Southland Corp., No. 07-82-0045-CV, 1983 Tex. App. LEXIS 4913
(Tex. App.–Amarillo 1983, no writ); McAllen Kentucky Fried Chicken No. 1 v. Leal,
627 S.W.2d 480 (Tex. App.–Corpus Christi 1981, writ ref'd n.r.e.); Watkins v. Davis,
308 S.W.2d 906 (Tex. Civ. App.–Dallas 1957, writ ref'd n.r.e.). 
         I would agree with the Florida court of appeals' conclusion in a factually similar
case involving injury to a customer using a pay telephone in front of a convenience
store. See Cohen v. Schrider, 533 So. 2d 859, 860 (Fla. 4th Dist. Ct. App. 1988). 
The summary-judgment record in Schrider included the testimony of the loss
prevention manager for 7-11. He testified that about ten similar accidents had
occurred in the three years preceding the accident at issue. Id. Ten others had
occurred in the two years afterwards. Id. The witness testified that 7-11 was looking
for ways to prevent the accidents, including discussions to determine whether parking
bumpers would help. Id. The Florida court disagreed with precedent from a sister
court in holding that the summary-judgment record presented issues of fact for a jury: 

 
We are aware of the decision in Schatz v. 7-Eleven, Inc., 128 So. 2d 901
(Fla. 1st DCA 1961), a twenty-seven-year-old case which is very similar.
In Schatz, the court said "it cannot be contended with any degree of
reason or logic that the owner of a store . . . should have anticipated that
automobiles will be negligently propelled" into their invitees. The
passage of the twenty-seven years and the knowledge and experience of
7-11 as pointed out by its Loss Prevention Manager are two factors
which make this case different from Schatz. The foreseeability issue is
more clear here; it is certainly a question for the jury in this case. Id. 
         Specifically, "[t]he absence of a history of similar accidents does not necessarily
relieve a defendant business of a duty to erect bumpers, guardrails, or warning signs. 
The defendant business may have constructive knowledge of similar accidents at other
similar locations. Constructive knowledge of these accidents may be sufficient to
establish foreseeability." Springtree Props. v. Hammond, 692 So. 2d 164, 168 (Fla.
1997); see also Dalmo Sales of Wheaton, Inc. v. Steinberg, 43 Md. App. 659, 687
(Md. Ct. Spec. App. 1979) (holding that testimony that safety-oriented practice among
traffic engineers of designing parking lots so as to avoid encroachment on adjacent
sidewalks was "common and fundamental" raised fact issue "that could enable an
ordinarily intelligent mind to draw a rational conclusion therefrom in support of the
right of the plaintiff to recover"). Accordingly, I would find that issues of fact remain
as to whether the circumstances surrounding the Agreement's formation included
SWBT's actual or constructive knowledge of similar accidents at other similar
locations. See Transcon. Gas Pipeline Corp., 35 S.W.3d at 665; see also Crown
Central Petroleum Corp., 727 S.W.2d at 741. 
         SWBT also asserts that the presence of barriers in front of the public pay
telephones at Coastal's store would not have prevented Blanche's death. Coastal
points to summary-judgment evidence to the contrary by way of expert testimony
originally proffered by the Ordonez-Esparza family in support of the Claim. SWBT
emphasizes Coastal's position in response to the Ordonez-Esparza family's claims that
Coastal was not negligent in not providing barriers between its parking lot and the
public pay telephones at its convenience store. At best, SWBT's arguments
underscore that issues of fact remain to be resolved. See Mendoza v. Fid. & Guar. Ins.
Underwriters Inc., 606 S.W.2d 692, 694 (Tex. 1980) (finding that the weight to be
given party's testimonial declarations that are contrary to position is to be determined
by trier of fact). 
(4) Use of SWBT's Public Pay Telephone Equipment
         Finally, the summary-judgment record in this case contains conflicting evidence
as to whether or not Blanche was using SWBT's pay telephone equipment at the time
she was killed. According to Blanche's 10-year-old cousin who had gone to the store
with her, the truck hit Blanche just as she hung up the phone:
Q: Can you tell us what you overheard?
 
A: She was telling the operator that she needed help. She was
just playing around.
 
Q: Do you remember anything else she said?
 
A: Well, I remember when she was telling the operator that she
needed help, that she had lost her quarter.
 
Q: Uh-huh. 
 
A: – but instead of saying quarter she said that she had lost her
telephone. 
 
Q: How long after she hung the phone up, if you know, how long
was it between that and the truck hitting her? I mean if you – I don't
want you to guess at it. Just give us an idea. Was it right away? Was
it a long time?
 
A: It may [sic] like right away like. 

         Coastal argues that this testimony shows that Blanche was using the phone. 
SWBT argues that she was merely playing on the phone and was hit after she had
walked away from the phone. According to the only adult eyewitness, Blanche had
just picked up the telephone receiver at the time the drunk driver struck her: 
Q: Okay. Okay. Do you recall how long she was on the phone?
 
A: They had just come out of store. She set– I remember she set
the Coke down and she had picked the phone up and then that's when
the accident happened. 
 
Q: Okay. Could you hear Blanche's conversation on the phone?
 
A: She hadn't– she hadn't dialed nothing yet. She had just picked
it up.
  
Q: Okay. Now when you saw the truck hit Blanche, okay, was
she already off the phone or was she still on the phone?
 
A: She still had the receiver in her hand. 

         Coastal again argues that this testimony also shows that Blanche was using the
phone. SWBT responds that Blanche was merely "walking in front of" SWBT's public
pay telephone when she was killed. 
         Summary judgment on an indemnity claim is only proper where the undisputed
facts show that the claims for which indemnity is sought arise out of or are connected
with those contractual obligations for which indemnity attaches. See Boyd,
786 S.W.2d at 530. I would conclude that both parties failed to discharge their
burden of proving no genuine issue of material fact and entitlement to judgment as a
matter of law on the issue of whether the Claim arose out of or is connected with
SWBT's obligations under the Agreement. See Buccaneer's Cove, 831 S.W.2d at
584. Issues of fact remain to be resolved in two respects before any conclusion may
be reached that the Ordonez-Esparza family's claims triggered SWBT's duty to
indemnify Coastal under the terms of the Agreement: (1) whether the circumstances
surrounding the Agreement's formation included SWBT's actual or constructive
knowledge of similar accidents at other similar locations so as to make Blanche
Esparza's death under the facts of this case foreseeable; and (2) whether Blanche
Esparza's death occurred while she was using SWBT's public pay telephone
equipment. Accordingly, I would hold that the summary-judgment evidence does not
establish as a matter of law that there is no genuine issue of material fact as to one
or more of the essential elements of Coastal's cause of action for contractual
indemnity. See Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997);
see also Muston v. Nueces County Sheriff's Dep't, 122 S.W.3d 469, 472-73 (Tex.
App.–Corpus Christi 2003, no pet.). I would sustain Coastal's first issue as it relates
to both parties' traditional motions for summary judgment. 
 2. Interpretation of SWBT's Duty to Defend and Insure
         Coastal maintains that paragraph 19 of the Agreement parallels the indemnity
clause to create an unconditional obligation on the part of SWBT to defend against the
Ordonez-Esparza family's claims. However, the duty to defend and the duty to
indemnify "are distinct and separate duties." Utica Nat. Ins. Co. v. American Indem.,
141 S.W.3d 198, 203 (Tex. 2004); Reser v. State Farm Fire & Cas. Co., 981 S.W.2d
260, 264 (Tex. App.–San Antonio 1998, no writ). Unlike the indemnity clause in
paragraph 9, paragraph 19 limits SWBT's duty to defend and insure to "all claims,
demands, and causes of actions arising by reason of SWBT's access to Coastal's
Premises. . . ." Coastal agreed in paragraph 10 of the Agreement:
to grant SWBT and its service representatives, agents and employees
reasonable access to the Premises for installing, servicing, repairing and
maintaining the Public Telephone Equipment and for collecting the
receipts from the Public Telephone Equipment. . . .

It is undisputed that SWBT was not accessing Coastal's premises at the time of the
occurrence in question. I would hold that the facts as alleged by the Ordonez-Esparza
family did not trigger any duty SWBT owed Coastal to defend or provide insurance
benefits on the Claim pursuant to paragraph 19.


 See Stumph v. Dallas Fire Ins. Co.,
34 S.W.3d 722, 729 (Tex. App.–Austin 2000, no pet) ("If a petition does not allege
facts within the scope of coverage, an insurer is not legally required to defend the suit
against its insured."). I would overrule Coastal's second issue. Accordingly, I would
also hold that SWBT did not act in bad faith when it refused to defend or provide
insurance benefits for the Claim. I would overrule Coastal's third issue. Similarly, I
would also overrule Coastal's fourth issue with respect to Coastal's breach-of-contract
claim that SWBT breached the Agreement by not defending or providing insurance
benefits for the Claim. 
D. Disposition of SWBT's No-Evidence Summary-Judgment Motion
          SWBT asserted that there was no evidence of "the happening of the occurrence
for which indemnity was promised," an essential element of Coastal's indemnity claim
on which Coastal would bear the burden of proof at trial. See Branton, 100 S.W.3d
at 647. SWBT also asserted that there was no evidence that the absence of bumper
posts was a legal cause of Blanche's death. I would conclude that the summary-judgment evidence discussed above is more than a scintilla that "would enable
reasonable and fair-minded people to differ in their conclusions" on both issues. Id. 
I would hold that Coastal produced sufficient evidence to raise genuine issues of
material fact as to the elements challenged by SWBT. See Tex. R. Civ. P. 166a(i); see
also Branton, 100 S.W.3d at 647. I would sustain Coastal's first issue as it relates
to SWBT's no-evidence motion for summary judgment. 
III. CONCLUSION
         I would sustain Coastal's first issue and reverse the judgment of the trial court 
on the indemnity question and remand for further proceedings. See Tex. R. App. P.
43.2(d), 43.3(a); see also Swoboda, 975 S.W.2d at 775. I would overrule Coastal's
second and third issues and part of its fourth issue. Accordingly, I would affirm the
trial court's summary judgment in favor of SWBT on Coastal's claims that SWBT owed
it a duty under paragraph 19 of the Agreement to defend and provide insurance
benefits on the Claim, acted in bad faith when it refused to do so, and breached
paragraph 19 of the Agreement. See Tex. R. App. P. 43.2(a). I would hold that fact
issues remain to be resolved with regard to the parties' indemnity agreement and,
thus, not reach the part of Coastal's fourth issue asserting SWBT's breach of contract
in refusing to indemnify Coastal pursuant to paragraph 9 of the Agreement. See Tex.
R. App. P. 47.1. I would assess the costs of appeal to the party that incurred them. 
 
                                                               ERRLINDA CASTILLO
                                                               Justice

Concurring Opinion delivered and
filed this 20th day of January, 2005.